[No. 31817. Department One. May 27, 1952.]

ROBERT HUNT, *Respondent,* v. ANN N. MARSH *et al.,* *Appellants.*[1]

[1]Reported in 244 P. (2d) 869.

*Robbins & Robbins* and *Ralph E. Franklin,* for appellant Marsh.

*Muscek & Adams,* for appellants Palmer.

*Copeland & Tollefson,* for respondent.

GRADY, J.—This appeal is from a decree of the superior court rescinding an exchange of property agreement made between respondent and appellant Ann N. Marsh and awarding him a judgment for services rendered.

On and prior to July 1, 1949, respondent was the contract purchaser of an apartment building in the city of Tacoma and certain personal property used in connection with its operation. Appellant Ann N. Marsh was the contract purchaser of property known as the Pheasant Center Motel and the personal property used in connection therewith. Appellant Ted B. Palmer Company was engaged in the real-estate business and had both properties listed for the purpose of finding purchasers therefor. Richard Youngman was a salesman for Palmer. The appellants collectively will be referred to as such, but individually as Marsh and Palmer.

Palmer, acting in a dual capacity, made known to respondent and Marsh that he had the respective properties for sale. He brought the parties together for the purpose of negotiating an exchange of properties and took an active part with his salesman in the transaction. The result of the negotiations was the making of a sale and exchange

agreement between respondent and Marsh. Palmer was a party to the part of the contract which provided for the payment of a commission to him by each of the other parties.

The basis for the suit brought by respondent is his claim that appellants made false representations as to the income of the motel property and with reference to its area. The decree ordered restoration, and directed the parties to produce all of the records and accounts concerning the operation of the two properties to be examined and audited by a certified public accountant, and that there be an accounting. The counterclaim of Palmer, by which he sought judgment against respondent for his contract commission, was dismissed.

The motel property is in the form of a right angle triangle, the perpendicular being along the easterly line of highway 99, the base along the northerly side of South 96th street extended, and the hypotenuse being a line curving inward. This line is the westerly boundary of a highway connecting South 96th street and highway 99. The misrepresentation claimed was with reference to the part of the property at its apex consisting of approximately 1/25 of an acre, and will be referred to herein as the triangle.

The court found that both appellants represented to respondent that the income from the motel, which Marsh had operated for about thirty-six days, was $1,700, and that such representations were not true. However, the record shows that respondent did not fully accept such statements, but requested Palmer to procure from Marsh her books of account and investigate and determine the amount of income. Palmer secured an account book kept by Marsh, but respondent was not able to compute the income. Palmer analyzed the account and made known to respondent that it showed an income of approximately $1,400. Respondent indicated he was not interested in the proposed exchange of properties.

Marsh exhibited to respondent a map which had been drawn to scale by a licensed land surveyor. The map had delineated thereon state highway 99, South 96th street, and

the curved county highway. The triangle was designated by pink coloring. Respondent made inquiry about the triangle designated by the pink color, and was informed by Marsh that it was a part of the property.

Marsh and respondent discussed the feasibility of the installation of a service station at the base of the triangle and the probable income from its operation. Palmer and respondent met with an agent of an oil company and were informed by the latter that he would recommend to his company that a service station be installed. All parties assumed that the triangle was a part of the motel property. Respondent concluded that the income from the service station, together with that from the motel, would justify a purchase of the Marsh contract, and thereupon the exchange agreement was executed.

The respondent did not rely upon any representations made with reference to income. He learned that the first statements made as to income were incorrect. He ascertained the amount of income as shown by the account book. He did, however, rely upon the map that was exhibited to him by Marsh and her statement that the triangle was a part of the property included in her contract to purchase.

During the negotiations respondent was not furnished with any description of the property, but such description was before him when the assignment of the contract was made. The property was described by metes and bounds, and at the end of the description appeared the following words:

"Except any portion of said property deeded to, or taken by, the State of Washington or Pierce County for roads and highway purposes."

None of the parties seem to have noticed or placed any significance upon the exception or its effect. The records of Pierce county showed that on June 22, 1942, the then owners of the property conveyed the triangle to Pierce county. The description as shown by the instrument is very complicated and would require either a survey or one skilled in land descriptions to determine that the descrip-

tion contained the triangular space. If respondent had examined the recorded deed, he would not have been given such notice or knowledge as would preclude reliance upon the representation.

■ Although the area of land embraced within the triangle is small, it became an important factor in the purchase of the motel property when the installation of a service station was contemplated. The representations made by Marsh verbally and by the map she exhibited were material. These representations were not true because the property embraced within the triangle belonged to Pierce county. Marsh may not have had actual knowledge that the triangle was not a part of the motel property, but when she chose to represent to respondent by words and the exhibition of a map that such was the fact, she became bound thereby. In *Bryant v. Vern Cole Realty Co.*, 39 Wn. (2d) 571, 237 P. (2d) 487, we said:

"We have had occasion to consider many cases where owners or their agents have pointed out the wrong property or incorrect boundaries thereof to prospective purchasers. In some cases, this has been done when the parties have visited the location of the property. In other cases, the information was given and representations were made when the parties were away from the property. In either case, the parties are governed by the same rules of law. The result must be the same even though there may have been an honest mistake and no intent to deceive. These rules are set forth in *Bradford v. Adams*, 73 Wash. 17, 131 Pac. 449; *Dixon v. McGillivray*, 29 Wn. (2d) 30, 185 P. (2d) 109; *Darnell v. Noel*, 34 Wn. (2d) 428, 208 P. (2d) 1194; and other cases cited in the opinions."

The designation of the property was by means of a plat book exhibited to the purchaser by the agent of the seller negotiating the sale.

■ Under the circumstances surrounding the negotiations for the purchase of the motel property contract, respondent had a right to rely upon the representations made that the triangle was a part of such property and was not required to search the records of Pierce county to determine whether they were true or false. *Lawson v. Vernon*,

38 Wash. 422, 80 Pac. 559; *Daniel v. Glidden*, 38 Wash. 556, 80 Pac. 811; *Petersen v. Graham*, 7 Wn. (2d) 464, 110 P. (2d) 149.

■ The respondent being entitled to a decree ordering the exchange agreement rescinded, it becomes necessary to determine what further relief must be awarded. Each party must transfer and convey to the other that which has been received, and each must restore possession to the other of the respective properties. Each party is entitled, so far as is possible, to be placed in the same situation he was in at the time the exchange contract was executed.

When a party seeking rescission remains in possession of the property purchased during the litigation, the question arises whether he should account for the rents, issues, and profits received by him, or should account for the value of the use and occupation of the property occupied up to the time possession is surrendered. The use and occupation or rental theory was used in *Rummer v. Throop*, 38 Wn. (2d) 624, 231 P. (2d) 313. The trial court had made no findings of fact as to gross or net income received from the property there involved, but did make findings as to the fair rental value of the property. In *Darnell v. Noel*, 34 Wn. (2d) 428, 208 P. (2d) 1194, upon rescission of a contract to purchase, the occupant of the property was required to account for the rentals received, but was allowed to offset operating expenses, including a charge for remodeling a building on the property so it could be used as an apartment.

The adjustment arising out of the rescission of a contract must be made upon equitable principles. Each case is necessarily dependent upon its own facts. Much must depend upon the nature and character of the subject matter of the contract. The general subject is discussed in 55 Am. Jur. 1003, Vendor and Purchaser, § 611; 12 C. J. S. 1077-1098, Cancellation of Instruments, §§ 77-82; 3 Black on Rescission and Cancellation 1634-42, §§ 685-689.

■ The trial court concluded that the properties involved were of such a character that there should be an accounting by Marsh for the rentals she had collected while

in possession of the apartment building, less the expense of operation, and that, pursuant to his offer so to do, the respondent should account to Marsh for all funds he received as income from the motel, less the expense of operation. This method of adjusting equities between the parties may not be workable in all cases, but it appears to us to be fair and just in view of the situation in which the parties to this case have placed themselves.

The prayer of the complaint was that, upon rescission and restoration of possession of properties, the parties be required to make an accounting of the income received therefrom. No issue was tendered by the complaint that the accounting should include anything other than income received. We assume that the respondent had reference to net income. If this be so, the deductions from the gross income must be determined by the court when the accounting is made; also such questions as the employment of an accountant and an allowance for management of either property as a part of operating expenses.

We are unable to agree with the trial court that either Palmer or his salesman was guilty of fraudulent conduct which would preclude Palmer from the right to recover a commission pursuant to his contract therefor. At the request of respondent, Palmer assisted in investigating the income of the motel while it was operated by Marsh, and as a result he was able to inform respondent that the claimed income of $1,700 was not correct. Palmer was not in any way a party to any representation as to whether the triangle was a part of the motel property.

We have considered the other questions raised by appellants and find them to be either without substantial merit or unnecessary to be decided.

The part of the judgment adverse to Palmer is reversed and the cause remanded for the entry of judgment upon his counterclaim. The part of the decree affecting respondent and Marsh on the question of rescission and restoration of property is affirmed, and the cause remanded for the purpose of an accounting. Appellant Palmer will recover costs

on appeal against respondent. Respondent will recover costs on appeal against appellant Marsh.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

