[No. 36703. Department One. January 2, 1964.]

LEWIS C. YOUNT et al., Appellants, v. INDIANOLA BEACH ESTATES, INC. et al., Respondents.*

*Lycette, Diamond & Sylvester,* for appellants.

*Howe, Davis, Riese & Jones,* for respondent Indianola Beach Estates, Inc.

HALE, J.—There are times when an attempt by the courts to rescind a contract is like trying to unring a bell. What's done is done and cannot be undone. A problem in rescission faced the learned trial judge here.

Plaintiff Yount, an experienced trader in real-estate equities, along with one Dale Brady, had been buying and selling real-estate interests and participating in highly complicated real-estate deals since 1955. He understood the complexi-

*Reported in 387 P. (2d) 975.

ties of these trades and had grown accustomed to the use of complicated real-estate paper.

On July 25, 1960, plaintiff Yount and his coplaintiff Kreigel contracted to purchase from the defendant corporation, Indianola Beach Estates, a parcel of land which we shall call Block 60, Kitsap County,[1] for $17,500. Dale Brady, Yount's former associate and confidant, had become president of Indianola. Plaintiffs Yount and Kreigel paid Indianola $5,000 cash, and made a transfer of their interest in a land contract for an additional $5,000. This transfer consisted of execution by plaintiff Yount of what is called a purchaser's deed and assignment of real property to land we now refer to as Government Lot 6, Jefferson County.[2] At the time of his assignment of his purchaser's rights to Government Lot 6, Jefferson County, Yount owed a balance thereon in the sum of $4,295.96 to one Gordon Messenger, payable in regular monthly installments. Indianola promised to make these installment payments to Messenger as they fell due.

Thus, plaintiffs had paid to Indianola $10,000 of the $17,500 purchase price for Block 60, Kitsap County, and, on August 24, 1960, signed a formal agreement with Indianola to pay off the balance at the rate of $200 per month.

About 5 weeks later, on October 1, 1960, plaintiff Yount alone agreed to buy from Indianola another piece of real estate in Kitsap County, which we shall identify as Section 11, Kitsap County,[3] for the price of $10,500. At the time,

[1] "Block 60, except the North 30 feet thereof; and except the east, south and west 10 feet thereof of Indianola Beach according to plat recorded in Volume 4 of Plats, page 59 of Kitsap County, together with community beach rights and certain tidelands,"

[2] "Government Lot 6, Section 7, Township 29 North, Range 1 E.W.M. in Jefferson County, lying south and west of Government Canal, except roads,"

[3] "West Half of the East Half of the Southwest Quarter, Section 11, Township 26 North, Range 2, E.W.M., except that tract: Beginning at the northwest corner of said West Half of the East Half of the Southwest Quarter; thence East to the Northeast corner thereof; thence South 1750 feet along the east side of said tract; thence west to the west line of said tract; thence north along the west line of said tract to the point of beginning,"

Yount was in process of buying a mortgaged fourplex in Seattle, which we call Fourplex, King County.[4] The National Bank of Commerce held this mortgage on which Yount owed a balance of $10,512.48; and, in this purchase of Section 11, Kitsap County, Indianola gave him a credit of $4,225 for his entire interest in Fourplex, King County. Indianola agreed to pay the mortgage payments to the National Bank of Commerce as they became due. Yount's contract of October 1, 1960, with Indianola for his purchase of Section 11, Kitsap County, declared this $4,225 to be a down payment on the $10,500 purchase price and prescribed that the balance of $5,975 be paid at the rate of $100 per month.

All of the moneys and written instruments relating to these transactions were placed in escrow with Pacific Northwest Escrow Corporation, Lynnwood, Washington. Then, things got complicated. Enter: American Discount Corporation. With the knowledge and consent of plaintiffs Yount and Kreigel, and pursuant to their release of the contract from escrow, American Discount purchased all of Indianola's interest in Block 60, Kitsap County, for $6,163.25, and, with the knowledge, consent and release from escrow of plaintiff Yount, bought all of Indianola's interest in Section 11, Kitsap County, for $4,600.

Indianola became insolvent, and failed to pay the monthly payments to Gordon Messenger on plaintiff's purchase agreement for Government Lot 6, Jefferson County. Plaintiff Yount, to protect his interest, paid Messenger the sum of $1,800; he likewise made payments on the National Bank of Commerce mortgage on Fourplex, King County, in the amount of $749.54, which Indianola had allowed to become delinquent.

Plaintiffs Yount and Kreigel joined in this suit to rescind the various agreements with Indianola and to be restored to *status quo ante*. Rescission against American Discount was denied plaintiffs on two grounds of estoppel: (1)

---

[4] "Lots 8 and 9, Block 20, Denny & Hoyt's Addition to the City of Seattle, according to plat in Volume 2 of Plats, page 136, records of King County, except portion condemned,"

Yount's acquiescence in and consent to American Discount's purchase before it had been made, and (2) failure of Yount and Kreigel to require inclusion of Indianola's promises to pay the balance on the real-estate contracts purchased by American Discount Corporation. The trial court did hold, though, that Indianola's failure to make the mortgage payments to National Bank of Commerce and the contract payments to Gordon Messenger constituted sufficient grounds for rescission as to it.

The trial court found that (1) neither Brady, appellant Yount's former associate and confidant, nor Indianola occupied a fiduciary relationship to either of the appellants; (2) the sales or transfer from Indianola to appellants were neither fraudulent nor fraudulently induced; and (3) rescission of the contracts as to American Discount Corporation should be denied because appellants ought to be and were estopped by their own conduct to assert the remedy of rescission against American Discount.

Thereupon, a decree in equity based upon two alternatives was entered as a judgment. It provided that, if within 60 days plaintiffs paid to American Discount Corporation $10,800.45, less any amounts plaintiffs had applied on the two contracts for the purchase of Section 11, Kitsap County, and Block 60, Kitsap County, plus interest at 7 per cent and an attorney's fee of $400, or a total net sum of $11,563.21, American Discount, upon receipt of this sum, should then convey to plaintiffs Yount and Kreigel all of its rights and interest in and to Block 60, Kitsap County, and should then convey to plaintiff Yount all of its rights in and interest in and to Section 11, Kitsap County, and any claims of Indianola thereby would be quieted in plaintiffs. By exercising this alternative, all of the funds paid and contracts transferred by plaintiffs would receive full credit toward the transaction originally contemplated.

The other alternative of the decree provided that, if plaintiffs did not exercise the first alternative provision, the real-estate agreements of August 20, 1960, covering Block 60, Kitsap County, and October 12, 1960, referring

to Section 11, Kitsap County, would be confirmed and plaintiffs would then have judgment of $749.54 against Indianola for mortgage payments advanced by plaintiffs to National Bank of Commerce on the Fourplex, King County; and would receive judgment against Indianola in the sum of $1,800 to cover payments made by plaintiffs to Messenger on their contract for purchase of Government Lot 6, Jefferson County. In such latter choice, American Discount would be granted judgment against plaintiffs on its counterclaim in amount of $3,000, plus $200 for an attorney's fee on the Block 60, Kitsap County, purchase, and $1,400, plus $100 for attorney's fee, as a judgment on its counterclaim against plaintiff Yount on its purchase of the Section 11, Kitsap County, contract.

Plaintiffs exercised the first alternative, but appeal the decree as it applies to Indianola and not as it affects American Discount. Appellants assign no error to the form of the judgment—which resembles a decree in equity—or to its relief in the alternative, but rather to the insufficiency of the relief contained in it.

Appellants' chief concern relates to what they consider to be faulty application of the doctrine of rescission. They assert that the court in effect granted a partial rescission, a fractional remedy that failed to make them whole. They say complete rescission, under these facts, occurs if they are granted judgment against Indianola in the sum of $5,000—the amount of their original down payment in cash —plus escrow fees, costs and incidental expenses.

There is no controversy here as to the facts because no statement of facts has been filed. The problem presented arises from the conclusion drawn by the court from the facts as it found them and the remedy applied pursuant thereto.

Plaintiffs insist upon a full rescission, that is, a return of all of their interests in the properties which they transferred to Indianola, together with a judgment against Indianola for the $5,000 down payment and incidental costs and attorney's fee incurred. They point to Indianola's fail-

ure to maintain the payments due Messenger on a forfeitable contract and its failure to keep the National Bank of Commerce mortgage current as breaches of contract sufficiently serious to warrant rescission and restoration. Being insolvent, respondent Indianola Beach Estates is noncommittal and apparently has little interest in the proceedings; but American Discount, by virtue of its intervening interests, challenges rescission here.

Are the trial court's powers in equity sufficiently broad to encompass the alternative relief granted in its judgment?

 Combining the power to administer legal and equitable remedies in one forum of unlimited jurisdiction, though involving but one form of action (RCW 4.04.020), did not abolish the distinctions between law and equity. *Petersen v. Boyd,* 46 Wn. (2d) 97, 278 P. (2d) 400. Here plaintiffs seek rescission for breach of contract. Breach of contract may evoke both action at law for damages or rescission of the agreement violated, depending upon the position in which the breach of contract has left the parties or the effect rescission may have on such third persons as are not answerable in either law or equity for such breach.

We have in this jurisdiction but one form of action for the redress of private wrongs and the protection of private rights called a civil action (RCW 4.04.020), yet, although the form of the action is unitary, the relief sought may be multiple, and the court recognizes the distinctions between law and equity in affording relief for the invasion of private rights or the committing of a private wrong. *Petersen v. Boyd, supra.*

 Acknowledging the historic distinctions between law and equity, and considering both its powers under the law and in equity as coalescing in one form of action, the trial court applied both law and equity in making its final order. Having before it at the outset a cause cognizable in equity, the court retained jurisdiction over the subject matter and the parties to be affected by its decree for all purposes—to administer justice among the parties accord-

ing to law or equity. *Hubbell v. Ward,* 40 Wn. (2d) 779, 246 P. (2d) 468; *Phillips v. Blaser,* 13 Wn. (2d) 439, 125 P. (2d) 291.

Appellants cite *Morango v. Phillips,* 33 Wn. (2d) 351, 205 P. (2d) 892, as controlling of the proposition that, where rescission is granted either by decree of a court or by mutual agreement, the parties must be placed *"in status quo so far as it is practicable"* to do so. We agree that the contract, when rescinded by a court of competent jurisdiction, is deemed to be not only at an end, but, further, that it never existed. Rescission contemplates full restoration of the parties to their position before the contract had been made. But the important qualification in the foregoing rule *so far as practicable or possible*—must be noted.

Thus, the final decree in this action, though granting relief in both law and equity, does not grant rescission, and principally because *it was not practicable to do so.* The intervening rights of American Discount, coming into existence with the agreement and sanction of appellants, made rescission impossible. The court could not in equity grant rescission between appellants and Indianola and thus force American Discount Corporation to look to Indianola, an insolvent, for reimbursement. We would have difficulty in prescribing a more equitable mode of resolving the problems than are contained in the final decree in this cause. The final decree, granting judgment in the alternative, emanated from the discretionary powers of the court. Granting and denying rescission are discretionary. *Burton v. Dunn,* 55 Wn. (2d) 368, 347 P. (2d) 1065; *Hesselgrave v. Mott,* 23 Wn. (2d) 270, 160 P. (2d) 521.

Quite properly, the trial judge denied appellants' request for a $5,000 additional judgment against Indianola. Since only partial rescission was available because of an innocent third party's intervening rights, the court did not abuse its discretion in disallowing rescission by granting in lieu thereof a different but equally equitable remedy—a remedy

consonant with its equitable powers to do justice to all parties.

Judgment affirmed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.

January 21, 1964. Petition for rehearing denied.