[No. 312-2.   Division Two.   April 7, 1971.]

*In the Matter of the Estate of* MARY T. HASTINGS, *Deceased.*

*Edward Starin* and *Betty B. Fletcher* (of *Preston, Thorgrimson, Starin, Ellis & Holman*), for appellant.

*Patrick W. Crowley* and *Corbett, Siderius & Lonergan,* for respondent.

PEARSON, J.—This is a will contest between the sole heir at law and the sole beneficiary under the purported will of Mary T. Hastings. The basis of the action was that the will was properly executed in September, 1940 but the first

page thereof, containing all the dispositive provisions, was typed on paper not manufactured until 1966.

Mary Hastings died in July, 1967 at the age of 69. Shortly thereafter, several of her friends and relatives, including respondent, Mollie Hastings, an aunt of Mary Hastings, met to consider settlement of the estate, which was thought, correctly, to be substantial. Testimony about this meeting indicates that no one present stated any knowledge of a will, though the question was raised. A search of the house Mary and Mollie had shared for a number of years was undertaken. Later, a second search was made, but no will was found. Thereafter, it was decided that an administrator ought to appointed and this was done. The debts and taxes of the estate were paid. A tracing of heirs showed that appellant, Paul Hastings (a nephew), was the sole heir at law of Mary Hastings.

Only after a partial distribution of assets to Paul Hastings—some 16 months after the death of Mary Hastings—did the purported will come to light. On Thanksgiving Day, 1968, Mollie requested that the administrator of Mary's estate, who was also an old friend, fix a leaking faucet in the basement of her home. When he came back upstairs, a tin box containing the document in question lay open on a table. Mollie stated that she had always known that a will existed and where it was, but that she had not produced it before, since she had not been asked to do so. Mollie Hastings was 85 years of age at the time the will was produced.

Uncontroverted evidence was introduced that the document in question was typed on a special sort of bond paper manufactured by the Valley Paper Company of Holyoke, Massachusetts, and that the type of paper involved had in its watermark a code symbol designating the year of production of the paper. Cards bearing the code designs for various years and exemplars of paper manufactured in those years were introduced. Thereafter some six expert witnesses testified about the year of manufacture of page one of the will of Mary Hastings. Page two was signed by Mary Hastings and two witnesses, now deceased, and dated

in 1940. This page was concededly manufactured in 1939 or 1940. The disputed question is whether page one was manufactured in 1939 or 1966. The trial court found that it was manufactured in 1939, and accordingly upheld the validity of the will.

Appellant contends the trial court's finding is unsupported by evidence and that the expert testimony conclusively established that page one was manufactured in 1966.

If appellant is correct that page one of the will was on paper manufactured in 1966, then an alteration of the will is demonstrated. In this case, all of the dispositive provisions of the will of Mary Hastings are on the disputed first page. If that page is found to be a substituted page, the whole will must fall, because the court will be unable to even guess what the content of the original page one might have been. Such an alteration would certainly be a material alteration. *See In re Estate of Campbell,* 47 Wn.2d 610, 288 P.2d 852 (1955). If this were the case, the estate would pass by intestate succession to the appellant.

As we noted above, several expert witnesses testified on the crucial question of what year page one was manufactured. We must concern ourselves now with what effect is to be given this testimony. Unless the court is conclusively bound by the evidence offered by appellant's experts, the judgment of the trial court must be affirmed.

It has long been held that expert testimony is to be considered and weighed by the same tests as other testimony. *Gustafson v. Seattle Traction Co.,* 28 Wash. 227, 68 P. 721 (1902); R. Meisenholder, Evidence Law and Practice, 5 Wash. Prac. § 361 (1965). Opinion evidence is not generally conclusive, but is accorded such weight as reasonably attaches to it. *E.g. Richey & Gilbert Co. v. Northwestern Natural Gas Corp.,* 16 Wn.2d 631, 134 P.2d 444 (1943). Contrary opinions must be weighed by the trier of fact. *E.g. Clevenger v. Fonseca,* 55 Wn.2d 25, 345 P.2d 1098 (1959); Washington Pattern Jury Instructions, 6 Wash. Prac. 2.10 at 23 (1967).

As a general rule, opinion evidence is not binding on the

trier of fact. *Kearney v. Washington Nat'l Ins. Co.*, 184 Wash. 579, 52 P.2d 903 (1935); *Richey & Gilbert Co. v. Northwestern Natural Gas Corp., supra;* 32 C.J.S. *Evidence* § 567 (1964). With these axioms in mind, we take up the question of whether the decision of the trial court that page one is a valid, unsubstituted page is supported by substantial evidence. We believe that it is, and that the decision of the trial court must be affirmed.

The expert opinion offered by appellant strongly supports the proposition that page one was typed on paper manufactured in 1966. The testimony largely pertained to a watermark symbol appearing on page one which admittedly was subject to distortion during the manufacturing process.[1] However, this is not the only evidence in the case. Mollie Hastings testified that she had known of Mary's will and its contents for many years. She also stated that the will had remained for many years in the box from which it was recovered. One of the defendant's witnesses, though his qualifications were somewhat questionable and his testimony was weakened on cross-examination, stated the opinion that page one carried a 1939 watermark. Finally, the will itself was received in evidence and could have been examined by the trial judge for the purpose of more completely understanding the evidence presented and for assisting him in evaluating and weighing the opinions expressed by the experts. As an exhibit in the case, the will was available also for visual examination and comparison of its two pages.

■ We think that this evidence raised a question of fact to be resolved by the trial court. It weighed the evidence before it and apparently chose not to accept the opinions of appellant's experts. Since there is substantial evidence to support the trial court's resolution of the fact question involved, that decision must stand. *See In re Estate of Riley,*

---

[1] The watermark symbols in question are: 1939 ✕ ; 1940 ⋈ ; 1966 X . When it is remembered that some distortion of these symbols occurs during manufacturing, it may be appreciated that some difficult fact questions were involved in this case.

78 Wn. 2d 623, 479 P.2d 1 (1970); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). This is especially true in view of the statutory presumption that a will admitted to probate is a valid will. RCW 11.24.030.

■ We think that the trial court well exercised its discretion in refusing to award costs to respondent under RCW 11.24.050. This case involved a close question of fact. It clearly should not fall within this statute. *In re Estate of Mitchell,* 41 Wn.2d 326, 249 P.2d 385 (1952). Respondent's cross-appeal on this issue will be dismissed.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.