[No. 379-2. Division Two. March 30, 1972.]

JESS W. TAYLOR *et al., Respondents,* v. BALCH LAND DEVELOPMENT CORPORATION, *Appellant.*

*Michael S. Curtis*, for appellant.

*Paul R. Cressman* and *William L. Hintze* (of *Short, Cressman & Cable*), for respondents.

PEARSON, J.—This is an action to rescind a land development contract. Because of a stipulation made by the parties, the appeal is limited to a consideration of the proper measure and amount of setoff for work done by the land developer. We affirm the judgment.

Plaintiff-respondent, Jess W. Taylor, owned approximately 360 acres of land near Sequim, in Clallam County that he wished to develop for residential use. In March, 1962, he entered into a contract with defendant-appellant, Balch Land Development Corporation, to carry out his desires.

The contract provided that Taylor was to deed the land to Balch in 60-acre parcels, for $200 per acre. Balch contracted to plan, plat, develop and sell the property, pay all development expenses, keep the property free from liens, diligently pursue the development, and to provide plaintiff with monthly statements.

Development costs were to be reasonable, selling expenses were not to exceed 25 per cent of the gross selling

price, and net profits from sales were to be divided equally between the parties.

Another provision of the contract recited that the undertaking was *not* a joint venture, and Taylor was to assume no financial risk in connection with the development. The development was named "Sunland."

As plans progressed, the parties became more ambitious, and it was decided to construct an 18-hole golf course with some residential lots facing the fairways. Balch attempted unsuccessfully to obtain additional financing from the Small Business Administration. Financial difficulties arose in 1965. Development and sales progress slowed and work previously done began to deteriorate.

Balch failed to pay bills when due and kept inaccurate records. It was claimed that Balch subsidiaries were receiving a profit markup on work done before it was recorded as a development expense. Numerous lot purchasers and creditors became disenchanted and by the spring of 1966 work was nearly at a standstill.

In April, 1967, Taylor commenced the present action for rescission of the development contract. A large number of the lot purchasers intervened in the action. Early in 1968, after trial had commenced, a stipulation was made to enable Balch to continue work on the development. However, it failed to comply with the stipulation, the trial resumed and in January of 1969 the trial court entered a decree rescinding the contract.

The decree required that all land and proceeds from the sale of lots be returned to Taylor, who was required to continue the development in the manner that had been represented to the intervenors. Balch was to receive a setoff of the following: cost of improvements to the property, less the cost of restoring deteriorated work, plus the reasonable expenses of lot sales already made, plus the sums of money Taylor already received from Balch. The amount of setoff was referred to a court-appointed referee.

At the referee's hearing, the expert witnesses estimated the cost of improvements using different methods with

widely divergent results. Balch's expert based his estimate of improvement costs ($402,840) upon what an average contractor would bid to do the work. Taylor's expert, using a lineal measurement cost method, arrived at an estimate of $214,825. The referee accepted this latter estimate, which created a net setoff to Balch of $441,268.36 and a net judgment for Taylor of $359,478.01.

The trial court entered a supplemental judgment in accordance with the report of the referee. However, before the supplemental judgment was entered, Balch, by stipulation, waived its right to appeal from the decree of rescission, and appeals now only the amount of the setoff awarded by that judgment.

Balch's numerous assignments of error condense into two contentions: (1) the trial court erroneously directed the referee to determine the "cost of the improvements," where the proper measure of setoff should have been the difference in market value between the developed and undeveloped land; (2) if cost of the improvements were a proper measure, then the referee should have accepted Balch's appraisal, since it was measured by what a contractor would bid to accomplish the improvements.

Balch's first contention is premised upon the customary principle of rescission and restitution that the parties must be returned "in status quo so far as it is practicable" (*Yount v. Indianola Beach Estates, Inc.*, 63 Wn.2d 519, 387 P.2d 975 (1964)) and that it is improper to permit the aggrieved party to retain the benefits of the defaulting party's part performance without paying for it. *Golob v. George S. May Int'l Co.*, 2 Wn. App. 499, 468 P.2d 707 (1970).

· In urging that "unjust enrichment" in this case should be measured by the difference in market value between the developed and undeveloped land, Balch relies upon the principle enunciated in *Gregory v. Peabody*, 153 Wash. 99, 279 P. 102 (1929). In *Gregory* a prospective tenant under an oral agreement to enter into a 15-year lease placed permanent improvements on certain land with the consent of

the owner. When the owner refused to execute the lease in reliance upon the Statute of Frauds, the tenant sought recovery on a theory of unjust enrichment. The trial court, by instruction to the jury, limited recovery to the amount expended by the tenant. In reversing and allowing a new trial, the Supreme Court stated at page 101:

[T]he measure of damages is not what the prospective tenant expended, but the value of what the prospective landlord received by and through the tenant's expenditures.

Balch also relies upon an analogy to eminent domain cases where the measure of recovery is the fair market value of the property taken. *State v. Rowley,* 74 Wn.2d 328, 444 P.2d 695 (1968).

We find neither of these lines of authority applicable here. Were this a case where full rescission could be granted, then arguably the owner has been unjustly enriched by the amount the market value of his land has been enhanced, if that value should exceed the cost of improvement made.

However, because of the intervening rights of innocent lot purchasers, Taylor did not receive from Balch by the decree of rescission unencumbered land which he had originally conveyed. The decree of rescission requires Taylor to continue with the development and carry out the representations made by Balch to the various lot purchasers. In this respect, it would have been inequitable for the court to allow Balch, who defaulted upon the contract, to benefit by an enhancement of the land values beyond the cost of its improvements. *See Yount v. Indianola Beach Estates, Inc.,* *supra.*

Furthermore, we find nowhere in the record, either before the trial court or before the referee, where Balch offered to prove that the enhanced market value of the land exceeded the cost of the improvements which were made. We must, therefore, speculate that a retrial of the setoff issue would be to Balch's benefit. We think that as a prerequisite to review, there must be some record by which

we may ascertain that an unjust enrichment beyond the improvement costs has occurred. *See Cameron v. Boone,* 62 Wn.2d 420, 383 P.2d 277 (1963). *See also Golob v. George S. May Int'l Co., supra,* wherein the court stated at page 507:

> If, however, the part performance is worthless or if the fact of benefit or the monetary value of such part performance is not proved there is neither a showing of enrichment nor a showing that the retention of benefit of such services is unjust. The burden of showing unjust enrichment and its value is upon the claimant defaulting party.

(Footnotes omitted.)

In the instant case, enhancement of market value is obscured by the obligations which will be incurred by Taylor to the intervenors. Since the burden was upon Balch to prove the value of the unjust enrichment, we think it was necessary that an offer of proof be made.

■ Lastly, recognizing that rescission is an equitable remedy calling for the application of equitable principles, the circumstances of the particular case should largely determine the method by which the parties are placed "in status quo so far as it is practicable." *Hopper v. Williams,* 27 Wn.2d 579, 179 P.2d 283 (1947); *Hunt v. Marsh,* 40 Wn.2d 531, 244 P.2d 869 (1952).

■ No Washington cases have come to light which exactly prescribe the proper measure of setoff where improvements have been made to real property and where full rescission is impossible of accomplishment because of the intervening rights of innocent third parties. *Yount v. Indianola Beach Estates, Inc., supra* recognizes the inherent equitable powers of the court to do justice where the rights of contracting parties are complicated with the rights of innocent third parties.

Being mindful that unjust enrichment usually is measured by the enhancement in value of real property by virtue of improvements placed by one on the property of another by mistake or other innocent reason (*Hardgrove v. Bowman,* 10 Wn.2d 136, 116 P.2d 336 (1941); *see also* 24

A.L.R.2d 11 (1952)), we think the trial court was correct in rejecting that principle here.

A better rule, which finds support in cases more nearly analogous to the case at bar, permits the developer to recover the enhanced market value of the property which he has improved *or* the cost of his improvements, whichever is the lesser. *Madrid v. Spears,* 250 F.2d 51 (10th Cir. 1957); *Kimmel v. Peach,* 240 Mich. 697, 216 N.W. 374 (1927); Restatement of Restitution § 42 (1937). Under such a rule, Balch cannot claim to have been prejudiced by having the setoff measured by the cost of the improvements.

■ We turn now to Balch's second contention, that the referee erred in rejecting its expert testimony and accepting the testimony of Taylor's experts on the value of the improvements made. We have previously pointed out the wide latitude the trier of fact has in considering the weight given to expert testimony or in accepting or rejecting it in toto. *In re Estate of Hastings,* 4 Wn. App. 649, 484 P.2d 442 (1971).

Taylor's main expert witness, Ruskin Fisher, was a licensed professional engineer, engaged primarily in all phases of land development. His opinion of the value was based upon his knowledge of the actual costs of comparable developments, based upon lineal measurements.

Balch's main expert witness, Richard A. Brown, while not a licensed engineer, was an experienced estimator, employed by construction contractors as such, and also as field engineer on construction projects. He had little experience with platted residential developments or golf courses. He approached the valuation as though he were a contractor bidding for the work over a 5-year period—later reduced to 2 years.

In a well-reasoned report, the referee pointed to the difference in expertise of the two expert witnesses and was persuaded by the greater experience and more persuasive quality of Fisher's testimony.

We decline to reweigh the evidence or to reevaluate the

credibility of the witnesses heard by the referee. Such is not our function. *Kuster v. Gould Nat'l Batteries*, 71 Wn.2d 474, 429 P.2d 220 (1967).

Affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied May 9, 1972.