[No. 4262–6–III.   Division Three.   April 20, 1982.]

HADLEY D. HACKNEY, ET AL, *Respondents,* v. SUNSET BEACH INVESTMENTS, ET AL, *Appellants,* JOHN KLOBUCHER, ET AL, *Respondents.*

*George W. Young* and *Leonard D. Smith,* for appellants.

*W. Scott Lowry* and *Lowry & Braff,* for respondents.

GREEN, J.—Hadley D. Hackney and his wife brought this action against Sunset Beach Investments, a limited partnership, Charles C. Tompkins, general partner, and Mr. Tompkins' wife, to rescind a real estate contract. They also sought to recover the cash down payment, amount spent for improvements, loss of anticipated profits, and attorney's fees. The partnership and the Tompkinses contested the rescission and filed a cross complaint to declare the contract forfeited. They sought to recover an alleged unpaid part of the down payment and attorney's fees. John Klobucher, the closing attorney, and his wife were joined as third party defendants. Following a trial to the court, judgment was entered in favor of the Hackneys for return of their cash down payment, expenditure for improvements, and costs. The relief sought in the cross complaint was

denied.

On June 23, and July 31, 1978, the Hackneys executed two earnest money agreements to purchase land owned by the partnership and the Tompkinses, located on Diamond Lake in Pend Oreille County. The purchase price was $108,000. The down payment consisted of guaranteed contracts to be transferred at closing and $16,000 in cash. The balance was to be paid through transferring other guaranteed contracts by November 1, 1979. Differences arose in the interpretation of the agreements and it was agreed John Klobucher, Mr. Hackney's attorney, would attempt to resolve them.

On October 31, 1978, a real estate contract was prepared and signed by Mr. Tompkins. It provided for a purchase price of $108,000, acknowledged receipt of $34,500 for the down payment, and specified the balance of $73,500 be paid by November 1, 1979. The sale was to be closed by Mr. Klobucher on November 1, 1978.

The parties and their respective counsel met on November 1 to finalize the transaction. During this meeting, to satisfy the down payment, the Hackneys paid $16,000 cash and Mr. Hackney, as president of Reflection Lake, Inc., executed an assignment of four real estate contracts, warranted to be worth $23,477. The assignment stated these contracts were subject to a mortgage to John A. Pring, Sr.; if that mortgage was released within 30 days, the interest in the fourth lot, valued at $5,000, would revert to Reflection Lake, Inc. Payment was guaranteed by Reflection Lake, Inc., and Mr. Hackney.[1]

The parties also executed an addendum to the contract. It provided "upon the acceptance and recording of the proposed plat and subdivision" of the property being purchased "the Seller [partnership and Tompkinses] will execute a Statutory Warranty Deed to each individual lot contained within said Plat, which Deeds shall be escrowed

---

[1]The assignment further gave Reflection Lake, Inc., the option, within 30 days, to substitute other contracts worth a face value of not less than $18,500.

with Howard K. Michaelsen, Attorney for the Seller . . ." It further directed the escrow agent to deliver a deed to each lot upon payment of $1,000 toward the balance owed by the Hackneys on the contract.

The Pring mortgage was not released by December 1. On December 7 the partnership and Tompkinses issued a notice of forfeiture to the Hackneys. The Hackneys then brought this suit for rescission.

### PARTNERSHIP AND TOMPKINSES' APPEAL

The partnership and Tompkinses contend the court erred in denying their motion to dismiss the rescission action at the close of the Hackneys' case and dismissing their forfeiture claim. They assert the $34,500 down payment was to be paid either in cash or in part by guaranteed, *unencumbered* contracts; the Hackneys failed to meet that commitment by November 1, 1978, and were given a 30–day extension in which to comply; and when that date passed without payment, they were entitled to declare a forfeiture. We disagree. Our review of the documents leads us to conclude the court properly found the down payment was made as acknowledged in the contract and the Tompkinses and partnership breached the agreement.

It is not disputed the Hackneys paid $16,000 cash toward the down payment and executed an assignment of four real estate contracts for the balance. This more than satisfied the $34,500 down payment. The assignment does not indicate the Hackneys were required to pay cash if the Pring mortgage on the assigned contracts was not released by December 1, 1978. To the contrary, it states if the mortgage was not released, the partnership and Tompkinses were entitled to the fourth lot valued at $5,000. Therefore, the Hackneys were not in default on December 1 and the notice of forfeiture was of no force or effect. We find no error in the dismissal of the forfeiture claim.

Nevertheless, it is contended the record does not support rescission of the contract. We disagree. The court found a material element of the agreement was the imme-

diate subdivision of the subject property and sale of lots in the summer of 1979 to generate the funds necessary for the Hackneys to pay the balance of the contract by November 1, 1979; it was necessary that Mr. Tompkins approve and sign a plat for the property before subdivision could begin; and he at first agreed, but later, without justification, refused to sign it. There is substantial evidence to support these findings. Mr. Tompkins, therefore, wrongfully refused to go forward with his obligation under the contract, *see, e.g., Jones v. Hollingsworth,* 88 Wn.2d 322, 327, 560 P.2d 348 (1977), and prevented Mr. Hackney from further performance. This, coupled with the notice of forfeiture, constituted a disaffirmance and anticipatory breach of the contract, entitling Mr. Hackney to rescission. *Krause v. Mariotto,* 66 Wn.2d 919, 406 P.2d 16 (1965); *Campbell v. Hauser Lumber Co.,* 147 Wash. 140, 144-45, 265 P. 468 (1928); *Lovric v. Dunatov,* 18 Wn. App. 274, 282, 567 P.2d 678 (1977); *Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp.,* 7 Wn. App. 232, 234, 499 P.2d 85 (1972).

The Tompkinses and the partnership argue parol evidence which led to the court's findings on this issue was inadmissible because it merged into the executed documents which are clear and unambiguous. We disagree.

█ The real estate contract provided Mr. Hackney was to pay the balance of the purchase price by assigning "the Vendor's interest in real estate contracts for the sale and purchase of portions of the [subject property]". The addendum to that contract provides "upon the acceptance and recording of the proposed plat and subdivision of the [subject] property", deeds to each individual lot were to be executed, escrowed, and released on payment of $1,000. None of the parol evidence varied or contradicted the terms of these documents. Instead, the testimony explained that sale of the lots was necessary to enable Mr. Hackney to pay off the contract balance by November 1, 1979. Moreover, the terms "upon the acceptance and recording of the proposed plat" in the addendum are indefinite and need explanation.

The evidence demonstrated Mr. Tompkins had to sign the plat before it could be recorded. This evidence was properly admitted to determine the parties' intent. *Ban–Co Inv. Co. v. Loveless*, 22 Wn. App. 122, 129–30, 587 P.2d 567 (1978). It has long been recognized

"Courts, in the construction of contracts, look to the language employed, the subject–matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described."

*Leavenworth State Bank v. Cashmere Apple Co.*, 118 Wash. 356, 361, 204 P. 5 (1922), quoting from 6 R.C.L. 849; *International Harvester Co. v. Bank of Cal., N.A.*, 29 Wn. App. 905, 632 P.2d 522 (1981). The rescission was properly granted.

## HACKNEYS' CROSS APPEAL

The Hackneys' cross appeal asserts the court erred in limiting their recovery to return of their down payment and costs expended for improvements to the property. They claim they are entitled to the enhanced value of the property which allegedly resulted from the improvements.

It has long been recognized in a rescission action, the parties, insofar as practicable, are to be restored to the same position they were in before the contract was made. *Yount v. Indianola Beach Estates, Inc.*, 63 Wn.2d 519, 524–25, 387 P.2d 975 (1964); *Hunt v. Marsh*, 40 Wn.2d 531, 536, 244 P.2d 869 (1952); *Hopper v. Williams*, 27 Wn.2d 579, 587, 179 P.2d 283 (1947); *Taylor v. Balch Land Dev. Corp.*, 6 Wn. App. 626, 631, 495 P.2d 1047 (1972). A purchaser who is in possession of the property may recover its enhanced value if the enhancement resulted from reasonable and necessary improvements. *Crawford v. Smith*, 127 Wash. 77, 79, 219 P. 855 (1923). *See also Taylor v. Balch*

*Land Dev. Corp., supra.*

The court found the value of the property on November 1, 1978, was $108,000 and as a result of improvements made by the Hackneys, it increased to $175,000; however, it found enhanced value to be an improper measure of damages. The record does not reflect the court's reasons for refusing to adopt this measure of damages or that the Tompkinses and the partnership objected to the portion of the finding which states the increased value was a result of the Hackneys' efforts. Nor did the Tompkinses or the partnership respond to this cross appeal. Although we may affirm the court's ruling upon any ground within the pleadings and proof, we are under no duty to independently search the record and the law to find acceptable grounds to support the court's decision. *Uber v. Kurbitz,* 3 Wn. App. 1017, 1021, 475 P.2d 799 (1970). Under these circumstances, we remand for a redetermination of damages. *Hobart Corp. v. North Cent. Credit Servs., Inc.,* 29 Wn. App. 302, 628 P.2d 842 (1981); *Aquarian Foundation v. KTVW, Inc.,* 11 Wn. App. 476, 523 P.2d 969 (1974).

On the other hand, the Hackneys' brief on appeal points out that when the findings were entered, the court stated the evidence did not indicate how much of the enhanced value of the property was due to inflation. Rescission is an equitable remedy and the method by which damages are determined depends upon the circumstances of each case. *Yount v. Indianola Beach Estates, Inc., supra; Taylor v. Balch Land Dev. Corp., supra.* Consequently, the court may fashion a remedy which, in its discretion, will best return the parties to their status quo ante. *See Dravo Corp. v. L.W. Moses Co.,* 6 Wn. App. 74, 90–92, 492 P.2d 1058 (1971).

Finally, the Hackneys contend the court erred when it refused to award them attorney's fees incurred in bringing this rescission action. They rely upon the following provision of the sale agreement:

If the seller shall bring suit to procure an adjudication of the termination of the purchaser's rights hereunder,

and judgment is so entered, the purchaser agrees to pay a reasonable sum as attorney's fees and all costs and expenses in connection with such suit, and also the reasonable cost of searching records to determine the condition of title at the date such suit is commenced, which sums shall be included in any judgment or decree entered in such suit.

and RCW 4.84.330:

> In any action on a contract . . . where such contract . . . specifically provides that attorney's fees and costs . . . shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract . . . or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

The court denied attorney's fees because it found this was not an action "on the contract", as required by the statute. The Hackneys contend the only way a purchaser could "procure an adjudication of the termination of" the *seller's* rights, which is the reverse of the provision in the contract as authorized by the statute, would be in an action for rescission. They argue this provision also entitled them to attorney's fees on appeal. We agree.

The contract authorized attorney's fees if the seller terminated the purchaser's rights, which is effectively an action for rescission. The statute gives the purchaser the same rights the contract gives the seller. We therefore reverse and remand for a determination of reasonable attorney's fees and costs of both the trial and the appeal, together with a redetermination of the Hackneys' damages.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied May 19, 1982.