IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

SHAHEEN RAHIMZADEH,

                Appellant,

and

MAHNAZ SHIRALIAN,

                Respondent.

No. 86306-1-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Shaheen Rahimzadeh appeals the trial court's dissolution order on several grounds. He challenges the court's valuation of several companies and commercial properties, and the division of community property. Because he has not established entitlement to relief, we affirm.

FACTS

Rahimzadeh and Mahnaz Shiralian were married for nearly 28 years before separating in February 2022. The community assets included two businesses: Excellent Choice Auto Sales (ECAS), a used car dealership, and Shaud Powers, a captive insurance company created to issue warranties on vehicles sold by ECAS.[1] The community also owned three commercial properties: (1) 9310 State Avenue in Marysville, (2) 11200 Evergreen Way in Everett, and (3) 9229 State Avenue in

_____

[1] The community also held other assets that are not relevant in this appeal.

Marysville. The community also owned SAKS Holdings LLC, which held title to the three commercial lots. SAKS is a single-member limited liability company that is a real estate investment holding company and not an operating company. SAKS's value is derived from the underlying assets held by the company. Its sole member was Rahimzadeh. ECAS leases both the 9310 State Avenue and Evergreen Way properties. An auto service and repair shop are under a long-term lease of the 9229 property. The 9310 property is contaminated from a prior gas station that previously operated on the site. The community was aware of the contamination prior to purchasing the property.

In the days following separation, Rahimzadeh dissipated a significant amount of community assets by transferring large sums of money from community accounts without Shiralian's permission. These acts included withdrawing $100,000 from one of the community bank accounts and depositing it into the petty cash account of ECAS, which was later found to no longer be in the account.[2] The trial court made several detailed findings regarding the many ways Rahimzadeh dissipated community assets, none of which Rahimzadeh challenges on appeal.[3]

The parties jointly retained expert Kevin Grambush to value ECAS, Shaud Powers, and the SAKS real estate portfolio. Grambush valued SAKS Holding at $2,726,690, a value he based on stipulated real estate appraisals and available cash minus debt. Grambush used the capitalized earnings method to value ECAS at $2.039 million, and Shaud Powers at $1.025 million. Rahimzadeh also hired CPA Steven Kessler, who testified that he agreed with Grambush's valuation of ECAS. However,

[2] The court found that Rahimzadeh attempted to submit fraudulent receipts and records to support his claim that he used the money for business expenses.

[3] The trial court's unchallenged findings of fact are verities on appeal. In re Dependency of J.A.F., 168 Wn. App. 653, 670-71, 278 P.3d 673 (2012).

Kessler said that the value of Shaud Powers should be reduced to $699,000 based on anticipated tax liabilities, but he acknowledged there was no immediate or planned liquidation of the entity. The trial court accepted Grambush's methodology of valuation and rejected Kessler's valuation. The real properties owned by SAKS were valued at $1,150,466 for the Evergreen Way property, $735,000 for the 9229 State Avenue property, and $1,210,833 for the 9310 State Avenue property using a stipulated appraisal.

During trial, Rahimzadeh submitted evidence of the prior contamination of the Evergreen Way property and his previously expended cleanup costs.

At the end of trial, the parties submitted written closing arguments and separate proposed property divisions. Rahimzadeh objected to any division of property that would result in Shiralian becoming his landlord. He proposed two alternative solutions.

Regarding the 9310 property that ECAS leases, Rahimzadeh proposed giving him that property whereby he would continue to share its rent with Shiralian for two more years. In the alternative, the property would remain in the LLC for two more years and at the end of October 2025, he would have the option to buy out Shiralian at its then-appraised value. Otherwise, he proposed that the property would then be sold with profits split between the parties.

The trial court found the total value of the community estate to be approximately $8 million. It awarded ECAS, Shaud Powers, and the 9310 property to Rahimzadeh. The court awarded the other two commercial properties to Shiralian, which includes the Evergreen Way property that ECAS leases. The trial court also awarded SAKS Holding

to Shiralian with specific conditions.[4] The court ordered both parties to assume responsibility for the mortgages related to their respective awarded properties. The trial court also awarded Shiralian a $300,000 equalizing judgment and an additional $109,948.50 for her share of back rent owed to SAKS from ECAS.

The trial court adopted Grambush's valuations in full, declining to apply a tax-effected adjustment to Shaud Powers. The court made the following finding regarding the 9310 property:

> This property is contaminated from the prior gas station that was operated on the site. Respondent has spent approximately $200,000 on cleanup costs. No information was presented to the Court as to whether additional cleanup, groundwater or soil monitoring is necessary (or what such additional work might cost). No information was presented as to whether the Washington State Department of Ecology has levied any penalties against the property, or whether Respondent is seeking contribution or repayment from prior owners under Washington's Model Toxic Control Act (Ch.70A.305 RCW) ("MTCA") and WAC 173-340. Accordingly, the Court lacks any evidence upon which to decide that the property should be valued at a different or lower amount than the appraised value. This real property should be awarded to Respondent as his separate property, free and clear of any interest of the Petitioner.

Rahimzadeh appeals.

## DISCUSSION

### Financial Entanglement

Rahimzadeh asserts that the trial court abused its discretion by creating an antagonistic, open-ended landlord-tenant relationship that left the parties financially

---

[4] Initially, the trial court had ordered the dissolution of SAKS Holding LLC. However, after realizing SAKS held title to all three commercial properties, the trial court on reconsideration chose to award the company SAKS to Shiralian with conditions. She was ordered to become a member of SAKS, and either refinance or pay off the mortgages related to the properties that were awarded to Rahimzadeh, convey the properties awarded to him, and seek to remove him from SAKS Holding.

entangled by awarding Shiralian the Evergreen Way property that ECAS leases. We disagree.

A trial court has broad discretion in distributing the marital property, and its decision will only be reversed in the case of manifest abuse of discretion. In re Marriage of Rockwell, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080. The court may distribute all property, whether categorized as community or separate. In re Marriage of Konzen, 103 Wn.2d 470, 477-78, 693 P.2d 97 (1985); In re Marriage of Irwin, 64 Wn. App. 38, 48, 822 P.2d 797 (1992), abrogated on other grounds by In re Marriage of Wilcox, 3 Wn.3d 507, 553 P.3d 614 (2024). This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion. In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). This occurs if the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A trial court's factual findings are accepted if supported by substantial evidence. In re Marriage of Thomas, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). Property valuation is a question of fact and is reviewed for substantial evidence. In re Marriage of Porter, 3 Wn.3d 579, 588, 555 P.3d 379 (2024).

A trial court operates within its discretion when its findings derive from the factual record, its conclusions apply sound law, and its decisions are not manifestly unreasonable. In re Marriage of Bowen, 168 Wn. App. 581, 586-87, 279 P.3d 885 (2012). A decision is manifestly unreasonable when it lies "outside the range of acceptable choices." Id. at 586 (quoting Marriage of Littlefield, 133 Wn.2d at 47).

Under RCW 26.09.080, a trial court must divide marital property in a manner that "appear[s] just and equitable after considering all relevant factors." Factors the court must consider include:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

RCW 26.09.080(1)-(4).

In a dissolution matter, the court has a duty to dispose of all the property of the parties before it, Shaffer v. Shaffer, 43 Wn.2d 629, 630, 262 P.2d 763 (1953), and the parties have a right to have their property interests definitely and finally determined. Bernier v. Bernier, 44 Wn.2d 447, 449, 267 P.2d 1066 (1954).

For the first time on appeal, Rahimzadeh asserts that the lease agreement between ECAS and SAKS Holding would bind him to Shiralian indefinitely, creating a perpetual, antagonistic financial relationship. Rahimzadeh's factual premise underlying his claim is flawed and does not properly reflect the record. During trial neither party expressed any concern about the lease terms, nor did they suggest that the lease would result in a legally indefinite or impermissible post-dissolution entanglement. Rahimzadeh never argued that the lease itself would force him into a perpetual arrangement or that it was legally defective in any way. He simply objected to having Shiralian as his landlord. Notably, the court found that "[n]o written lease agreement was provided to the Court."

6

The cases Rahimzadeh relies on, Shaffer, 43 Wn.2d 629, and Bernier, 44 Wn.2d 447, are distinguishable. In both cases, the trial courts were reversed for awarding real property to soon-to-be former spouses as tenants in common or joint owners, effectively leaving the property undivided and the parties financially intertwined. The courts in Shaffer and Bernier emphasized that such decrees failed to fulfill the court's statutory obligation to dispose of all property before it, and to allow the parties to move forward having their respective interests in their property definitively and finally determined. The issue of tenants in common or joint ownership is not present here. The trial court awarded Shiralian sole ownership of the Evergreen Way property. Rahimzadeh retains full control of ECAS. There is no shared decision-making, no co-management of property, and no ongoing co-ownership. Rahimzadeh fails to cite anything in the record to support his argument that the existence of the lease by itself, without any evidence of its terms, supports the creation of an indefinite financial relationship.

Moreover, a landlord-tenant relationship created through a lease is not, in and of itself, an impermissible post-dissolution entanglement under Washington law. Rahimzadeh relies heavily on Byrne v. Ackerlund, 108 Wn.2d 445, 739 P.2d 1138 (1987), but Byrne undermines his argument. In Byrne, a wife brought a declaratory judgment claim against her husband seeking the enforcement of a lien on a parcel of real property that the trial court had awarded the husband in their dissolution case. Id. at 446. The Supreme Court held that the lien/title arrangement is distinguishable from a tenancy in common relationship, because it is less likely to result in potential future litigation since there is no co-ownership involved. Id. at 449-50. The Supreme Court upheld the dissolution decree that left certain financial ties in place, so long as the

decree provides a specific disposition of each of the assets which are clearly and definitively allocated to the parties. Id. at 451-52. That is precisely what the trial court did here. The trial court awarded Shiralian the Evergreen Way property and Rahimzadeh was awarded ECAS. The division was definite and finally determined, fully satisfying RCW 26.09.080 and the standards affirmed in Byrne. Any future occurrence under the lease is nothing more than speculation, and certainly not such a concern that either party felt the need to admit a copy of the lease at trial or present testimony as to its terms.

We conclude that the trial court's property division was consistent with Washington's strong public policy favoring finality and disentanglement of divorcing parties. As recognized in Marriage of Rockwell, 141 Wn. App. at 242-43, a trial court has broad discretion in dividing community property, and its rulings are reviewed for abuse only where they are manifestly unreasonable or based on untenable grounds. That is not the case here.

Community Property Valuation

Rahimzadeh challenges the trial court's findings of fact and conclusions of law concerning the valuation of three key assets: ECAS, the 9310 property, and Shaud Powers. We find no error by the trial court in its valuations of said community properties.

*a. ECAS*

Rahimzadeh contends that the trial court abused its discretion when it chose not to discount the valuation of ECAS to reflect the change in operating circumstances. More specifically, Rahimzadeh claims that the trial court failed to take into account that

Shiralian would be ECAS's landlord once the Evergreen Way property is awarded to Shiralian.

The trial court's valuation of ECAS was well within its broad discretion under RCW 26.09.080. Contrary to Rahimzadeh's claim about the increased element of risk placed on ECAS, the trial court was well aware of the change in circumstances stemming from Shiralian's ownership of the Evergreen Way property and explicitly considered the future relationship between the parties. This is exemplified by the court noting that it is because it awarded Shiralian three income-generating properties that it denied her request for spousal support.

The factfinder is given wide latitude in what weight to give expert opinion. Taylor v. Balch Land Dev. Corp., 6 Wn. App. 626, 632, 495 P.2d 1047 (1972). The trial court relied on the parties' joint expert's valuation of ECAS, which used the capitalized earnings method and valued the business at $2,039,000, with no discount for speculative future landlord-tenant disputes. Even Rahimzadeh's independent CPA expert testified that he agreed with the ECAS valuation.

Rahimzadeh failed to demonstrate that the trial court manifestly abused its discretion in its valuation of ECAS.

*b. 9310 property*

Rahimzadeh contends the trial court erred by failing to reduce the value of the 9310 property to reflect environmental contamination, which he argues materially diminished its market value. He points to the more than $299,000 in remediation costs already paid and asserts that further cleanup liability remains. He argues that the trial court's decision to value the contaminated property at the appraised amount, instead of

at the roughly $600,000 discounted value he requested, amounts to an abuse of discretion. We disagree.

Here, the property in question was valued by Grambush, the parties' jointly retained expert. The trial court adopted that valuation. While Rahimzadeh raised concerns about contamination during his testimony, he only submitted historical information. He introduced environmental assessments from 2018 and 2019. Rahimzadeh also introduced a 2023 letter from the DOE asserting that after an investigation, they determined contamination exists on the ECAS Maryville property, requiring cleanup. Rahimzadeh testified to spending $229,000 on cleanup costs. However, despite being in the best position to know what if anything had been done and still needs to be done on the property, Rahimzadeh presented no evidence regarding the current status of the property. As the trial court found, "No information was presented to the Court as to whether additional cleanup, groundwater or soil monitoring is necessary (or what such additional work might cost)" and that the trial court lacked "any evidence upon which to decide that the property should be valued at a different or lower amount than the appraised value."

While Rahimzadeh's concern about unreimbursed cleanup costs and future liability may be valid, and were recognized by the trial court, he bore the burden of presenting evidence to establish such impact on the property's fair market value. His failure to provide such evidence means the trial court was not presented with a factual or legal basis on which to apply a downward adjustment of the property's valuation.

We conclude that Rahimzadeh has not established that the trial court abused its discretion in its valuation of the 9310 property.

*c. Shaud Powers*

Rahimzadeh contends that the trial court abused its discretion by failing to apply a tax effect when determining the value of Shaud Powers. We disagree.

Tax considerations should only be considered in valuing an asset where the "tax consequences are imminent, or arise directly from the trial court's property disposition, and the amount is not speculative." In re Marriage of Hay, 80 Wn. App. 202, 206, 907 P.2d 334 (1995); In re Marriage of Berg, 47 Wn. App. 754, 759-60, 737 P.2d 680 (1987).

The trial court explicitly rejected any suggestion that the value be adjusted based on hypothetical tax scenarios. Grambush, the parties' jointly retained expert, used a standard capitalization method for valuing captive insurance companies and declined to apply a discount for speculative tax liabilities, like rates for intangible assets or rates of return for goodwill, as he asserted that there is no objective evidence in the marketplace of what that rate of return is. The trial court found his methodology and assumptions credible and adopted his valuation in full. Although Kessler proposed a lower value based on potential tax consequences, the trial court was not required to accept his position. The factfinder is given wide latitude in the weight to give expert opinion. Taylor, 6 Wn. App. at 632. The existence of conflicting expert opinions does not necessarily equate to legal error. The trial court can accept or reject expert opinions. Brewer v. Copeland, 86 Wn.2d 58, 74, 542 P.2d 445 (1975).

Additionally, there was no evidence that any tax consequences were imminent presented to the trial court. While Kessler testified that captive insurance companies, like Shaud Powers, carry a "tremendous tax risk," he acknowledged that such

consequences would arise if the company was terminated, which would result in a tax liability and the potential of IRS involvement. Grambush testified that because Shaud Powers retained a professional company to help ensure that premiums set are not abusive, the risk of IRS scrutiny is mitigated. He further asserted that it would be inappropriate to discount the value of Shaud Powers for future tax liability where there is no actual evidence that termination of the company was imminent. Rahimzadeh, nor his expert, provided any evidence to support a claim that the IRS took or planned to take action against Shaud Powers.

We conclude that the trial court did not abuse its discretion in its valuation of Shaud Powers.

### Attorney Fees

Both Rahimzadeh and Shiralian request costs and attorney fees on appeal under RCW 26.09.140 and RAP 18.1. RCW 26.09.140 extends to attorney fees on appeal and authorizes an award of attorney fees on appeal based on the parties' financial resources. In re Marriage of Raskob, 183 Wn. App. 503, 520, 334 P.3d 30 (2014).

Rahimzadeh filed a financial declaration in support of his request. However, Shiralian filed an opposition motion challenging the truthfulness of Rahimzadeh's financial disclosure. We exercise our court's discretion and decline to award Rahimzadeh attorney fees because he had dissipated community assets almost immediately following the parties' separation and attempted to deceive the trial court by submitting fraudulent receipts and financial records. Thus, we need not consider Shiralian's motion objecting to Rahimzadeh's financial declaration.

Shiralian also submitted a financial declaration. She contends that if this court decides to award attorney fees, she, rather than Rahimzadeh, is more deserving of such an award. Based on Shiralian's financial declaration, we also decline to award her attorney fees.

We affirm.[5]

Cohen, J.

WE CONCUR:

, ACJ                Dwyer, J.

---

[5] Rahimzadeh does not assert that any of the court's rulings should be reversed because of judicial bias, but instead, if this court were to remand, seeks reassignment to a different judicial officer as a matter of fairness and judicial appearance. Because we affirm, we need not consider Rahimzadeh's request, which, nonetheless, has no support in the record.