Argued and submitted April 13, affirmed August 3, 1983

# MAYFLOWER FARMS,
## *Respondent - Cross-Appellant,*

*v.*

# TECH-MARK, INC.,
## *Appellant - Cross-Respondent.*

## (A7906-02619; CA A22716)

666 P2d 1384

E. Richard Bodyfelt, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Peter R. Chamberlain, and Bodyfelt, Mount, Stroup & Chamberlain, Portland.

Michael J. Gentry, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Tooze Kerr Marshall & Shenker, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen, and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals and plaintiff cross-appeals from the trial court's judgment awarding damages to plaintiff in this action arising out of defendant's breach of a contract to construct and install components of a cold storage room for plaintiff's use in its ice cream business. We affirm.

Through exchanges of correspondence in January and February, 1977, the parties agreed that defendant would install the components at plaintiff's Spokane, Washington plant for $46,612. Defendant also agreed to obtain approval of the installation from the Washington Department of Labor and Industries (DLI). No delivery date was specified, but there was evidence, and the trial court as the trier of fact found, that defendant was made aware that plaintiff needed the facility in time for the summer ice cream season. Defendant's performance was delayed, principally because of unanticipated difficulty in receiving DLI approval. In early May, 1977, plaintiff's attorney wrote a demand letter to defendant that the trial court found "gave notice to defendant that defendant was not in compliance with the contract terms and threatened legal action." There was oral communication to the same effect during the same general time period.

On July 17, 1977, plaintiff filed a breach of contract action against defendant in Washington.[1] Settlement negotiations were unsuccessful. Plaintiff took the position that it would pay defendant nothing until the action was resolved, and defendant refused to perform unless the action was dismissed with prejudice. In October, 1977, defendant's attorney demanded assurances of performance from plaintiff as a condition of further performance by defendant. None was received. In the meantime, the necessary DLI approval had been received in August, 1977. Although plaintiff obtained a bid for a cold room from another contractor later in the year, it did not accept that bid. It did not build a substitute facility until the spring of 1978, and that facility differed materially from the one plaintiff had contracted for with defendant.

---

[1] It is unclear if or why the parties did not proceed with that action. They make no argument here to the effect that the Washington action has any bearing on the proper disposition of this one.

In this action, plaintiff alleged that defendant breached the contract by failing to comply with DLI requirements and by failing to construct and install the cold room within a reasonable time. Defendant counterclaimed, alleging that plaintiff breached the contract

> "* * * in that it frustrated defendant's performance by the imposition of terms and conditions upon defendant's performance which were not part of the contract and by refusing to perform its part of said contract until such terms and conditions were met by the defendant.
>
> "* * * * *
>
> "As a result of plaintiff's breach of contract, defendant was unable to timely complete performance of its contract and defendant was damaged in the amount of $20,000."

The trial court awarded plaintiff damages equal to "the difference between the contract price and the cost of obtaining a reasonable substitute facility" and incidental and consequential damages for certain labor costs plaintiff incurred as a result of defendant's nonperformance. The court ruled against defendant on the counterclaim.

The court applied Article 2 of the Uniform Commercial Code (UCC) of Washington as the governing law[2] and found that July 17, 1977, "was a reasonable time on or before which [defendant] should have completed its performance." It then concluded that "timely performance * * * was a condition * * * rather than a covenant." The court also concluded that plaintiff's declarations after that date that it would not pay defendant until the litigation between the parties was resolved did not constitute an anticipatory repudiation. Defendant challenges both conclusions by its first and second assignments of error, respectively.

Defendant argues that the effect of the court's conclusion that timely performance was a condition, notwithstanding the absence of an express provision to that effect or of a specified time for performance in the contract, "was to strip [defendant] of all of its rights and entitled [plaintiff] to treat its

---

[2] Arguably, the contract was one for the installation of a structure rather than the sale of goods. However, the trial court concluded in its letter opinion that the predominant aspect of the transaction was defendant's agreement to sell certain components of the cold storage room. In any event, the parties agree in their arguments here that the UCC is applicable.

obligations with impunity—in a word, a forfeiture as to [defendant]." Defendant also contends that the court's characterization of the nonperformance as a breach of a condition rather than of a covenant led to the further erroneous conclusion that plaintiff was not in anticipatory breach. According to defendant, it was able to perform after receiving the DLI approval in August, 1977, and the rights and obligations of the parties were not completely obviated by defendant's failure to complete performance by July 17, although the failure to perform by that date may have been a breach of a covenant. Therefore, plaintiff's declared refusal to pay pending the outcome of its lawsuit was an anticipatory repudiation, RCWA 62A.2-610, and plaintiff's refusal to give "adequate assurance of due performance" in response to defendant's demand gave defendant the right to suspend *its* performance. RCWA 62A.2-609.

■ Although defendant agrees that the UCC is applicable, its argument supporting its first assignment relies on Washington cases and other authority espousing the *general* principle that implied conditions and time of the essence requirements are disfavored. We think the UCC provisions relating to reasonable time for performance and to buyers' remedies are more relevant here than the considerations relating to whether nonperformance is a breach of an implied condition or of a covenant. RCWA 62A.2-309(1) provides:

> "The time for shipment or delivery or any other action under a contract if not provided in this Article or agreed upon shall be a reasonable time."

RCWA 62A.2-711(1) provides:

> "Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (RCW 62A.2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
>
> "(a) 'cover' and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or
>
> "(b) recover damages for non-delivery as provided in this Article (RCW 62A.2-713)."

126

*See also* RCWA 62A.1-204.[3]

A second difficulty with defendant's argument is that it sometimes refers to the performance that the trial court concluded was a condition to be the securing of DLI approval. As the trial court read the contract documents, and as we do, the performance which had to be completed within a reasonable time was the ultimate installed delivery of the goods. That difference is critical. If the reasonable time for delivery of all of the goods to be provided under the contract was July 17, 1977, defendant's failure to deliver by that date was a breach going to the whole contract and giving plaintiff the right to cancel pursuant to RCWA 62A.2-711(1). After cancellation, there obviously could be nothing for plaintiff to repudiate anticipatorily.

The trial court found that July 17, 1977, was the reasonable time on or before which performance should have occurred. That is a question of fact, *see Jarstad v. Tacoma Outdoor Rec.,* 10 Wash App 551, 519 P2d 278 (1974), and there was evidence to support the finding. We accordingly reject defendant's first and second assignments of error.

■ Its third is that the court erred in its award of incidental and consequential damages. Those damages were for labor costs incurred by plantiff as a result of defendant's nonperformance and were awarded for a period commencing on July 17, 1977. Defendant argues that plaintiff was not entitled to damages for that period, because it gave defendant no "reasonable notification of breach or termination of contract * * * on or before July 17, 1977." The trial court found that plaintiff had given defendant adequate notice of breach, but it made no finding regarding termination or cancellation. Defendant relies on RCWA 62A.2-309(3), which provides:

> "Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable."

---

[3] The trial court's findings and conclusions use common law rather than UCC terminology. However, the court's earlier letter opinion makes it clear that the factual and legal issues were considered in the light of the UCC.

However, Official Comment 9 to UCC 2-309 says with reference to subsection (3):

"Justifiable cancellation for breach is a remedy for breach and is not the kind of termination covered by the present subsection."

Defendant does not argue that it was entitled to and did not receive notice of cancellation under RCWA 62A.2-711(1). We conclude that defendant's argument based on RCWA 62A.2-309(3) does not assist it in connection with its assignment of error relating to incidental and consequential damages.[4] Defendant makes two other arguments in support of the assignment, one of which is necessarily answered by our earlier discussion and the second of which—although not so formulated by defendant—essentially raises a fact question and does not require discussion.

■ Defendant's fourth assignment of error challenges the court's award of $1,704.44 in damages for what defendant calls "increased construction costs." In November, 1977, plaintiff received a competitive bid from Steel Management, Inc., for a replacement facility. The trial court adjusted the bid by subtracting charges for services that were included in the bid but not in the contract between plaintiff and defendant and then arrived at its award by subtracting the contract price from the adjusted bid amount. Plaintiff did not accept the bid, and it subsequently constructed a facility which was not comparable to the cold storage room contracted for.

Defendant argues:

"It was error to award $1,704.44 in increased construction costs, where [plaintiff] did not accept the higher bid, did not construct a substantially identical, or even similar, facility, and did not actually incur the increased costs awarded as damages.

"* * * * *

"[Plaintiff] has sought damages for both non-delivery and for 'cover.' The applicable statute RCW 62A.2-711 is specific. Under certain circumstances, and upon adequate proof, that statute provides for one *or* the other remedy, *but not both.* * * *" (Emphasis defendant's.)

---

[4] Defendant does not argue that any failure by plaintiff to give adequate notice is relevant to our disposition of the first two assignments of error.

The problem with defendant's fourth assignment of error is that the only thing it attempts to demonstrate is a failure by plaintiff to prove damages. However, nothing in the assignment or the supporting argument suggests that defendant moved for judgment on the basis of failure of proof. The only portion of the record set out in the assignment is the paragraph from the trial court's findings and conclusions holding plaintiff to be entitled to the $1,704.44 damages. We reject the assignment. *See Falk v. Amsberry,* 290 Or 839, 626 P2d 362 (1981).

■ Defendant's final assignment of error is that the trial court failed to award defendant counterclaim damages for the value of two automatic doors defendant shipped to plaintiff. Plaintiff argues, *inter alia,* that that claim for relief is outside the scope of defendant's pleading. We agree.

Plaintiff's assignments of error in its cross-appeal are either resolved by the foregoing discussion or relate to factual matters decided by the trial court in accordance with substantial evidence.

Affirmed.