**Gary HUDSON, Plaintiff-Appellant,**

v.

**TOWN AND COUNTRY TRUE VALUE HARDWARE, INC., Defendant-Appellee.**

Supreme Court of Tennessee, at Nashville.

Feb. 27, 1984.

On Petition to Rehear April 30, 1984.

Hunter Short, Nashville, for plaintiff-appellant.

John A. Gupton, III, Schulman, Leroy & Bennett, P.C., Nashville, for defendant-appellee.

## OPINION

FONES, Chief Justice.

The issue before the Court is the applicability of Article II of the Uniform Commercial Code (T.C.A. §§ 47–2–101 *et seq.*) to a sale that involved a going business where the assets sold included both "goods" as defined in the U.C.C.[1] and "non-goods."

### I.

Plaintiff, as seller, and defendant, as purchaser, entered into two separate contracts, one for the sale of real estate at $227,500 and the other for the sale of stock and fixtures of the business known as Hudson Hardware for $60,000.

The real estate contract was contingent upon buyer assuming an S.B.A. loan of approximately $231,065.91 at 9½% interest and upon approval of buyer's financing. The stock and fixtures contract was contingent upon approval of the land sale and provided for reduction of the purchase price based upon a percentage of sales from inventory between the contract date and the closing date.

Notwithstanding the fact that defendant needed only approximately $56,500 in cash

to close both contracts he visited several banks in an attempt to obtain financing in the amount of $70,000 to $75,000.

After defendant failed to close the two sales, plaintiff's attorney advised defendant by letter that it was in breach of contract, and unless remedied within five days, plaintiff would "pursue further legal recourses."

Subsequently, without any further notice, Hudson sold his hardware business as a going concern, again in two parts, for $39,341.79 less than that provided for in the contracts with defendant.

### II.

The chancellor held defendant had breached the contract finding no reasonable explanation had been advanced to justify its attempt to borrow approximately $15,000 more than needed to close the two contracts of sale with plaintiff. Essentially the chancellor found that defendant's attempts to obtain financing were inadequate and the "subject to approval of buyer's financing" provision in the real estate contract was not available as a defense. The trial court awarded plaintiff a judgment in the sum of $51,389.74, consisting of $39,-341.79 for breach of contract using as the measure of damages the difference between the contract price and the resale price, $10,277.95 attorney's fees, and expenses in connection with the first sale of $1,770, representing an attorney's fee of $150 and an accountant's fee of $1,620.

The Court of Appeals concurred in the chancellor's finding that appellee had breached the contract by not making sufficient attempts to obtain financing. It also found that while the parties did execute separate contracts, they intended this to be a single transaction, to-wit: the sale of a going hardware business. We agree that the parties intended this to be a single

---

1. "Goods" are defined in T.C.A. § 47–2–105(1) as follows: "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 8 of this title) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (§ 47–2–107).

transaction, principally because the entire sale was contingent on consummation of the sale of the real estate. We disagree with the implication in the Court of Appeals' opinion that it was predominantly a sale of a going hardware business. We think it was predominantly a non-goods sale because of the contingency, plus the fact that the value of the real estate exceeded the value of the hardware business by approximately $172,500.

Very few reported cases have confronted the issue of whether the U.C.C. governs the rights of the parties, in whole or in part, where a contract of sale involving both goods and non-goods is not consummated and damages are sought for breach of contract. The Court of Appeals adopted a divisible rule that segregates the assets into movable goods and non-movable goods and applies the U.C.C. measure of damages and its accompanying prerequisites to the movables only, leaving the non-movables subject to non-U.C.C. breach of contract law.

■ We think it preferable to adopt the test that views the transaction as a whole. If the predominant assets to be transferred are goods, the U.C.C. governs, but if the predominant assets are non-goods, the U.C.C. has no application.

The divisible rule adopted by the Court of Appeals was applied in *Foster v. Colorado Radio Corporation,* 381 F.2d 222 (10th Cir.1967). The Court of Appeals also cited *Jarstad v. Tacoma Outdoor Recreation,* 519 P.2d 278 (Wash.App.1974), and *Miller v. Belk,* 207 S.E.2d 792 (N.C.App.1974) as authority for the application of that rule. In *Jarstad* there was no discussion whatever that indicated there were any non-goods involved in the sale. The Court merely stated that the sale of a business that involved an inventory of sports merchandise came within the definition of goods as defined in the U.C.C. and applied the U.C.C. to a situation involving a consummated contract followed by an alleged breach of warranty of the inventory.

In *Miller,* although the North Carolina Court of Appeals acknowledged the holding in *Foster v. Colorado Radio Corporation, supra* with implicit approval, it expressly found that the sale of the business did not involve any non-goods, that all of the assets sold were goods and the U.C.C. was held applicable to the sale. That result would follow under the predominant factor test as well as the divisible test.

■ The predominant factor test was adopted and applied in *DeFilippo v. Ford Motor Co.,* 516 F.2d 1313 (3d Cir.1975), cert. den. 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 141. That case arose out of the attempted transfer of an auto dealership which included, among other things, parts and accessories, miscellaneous inventories, equipment, leasehold improvements, new vehicles, used vehicles and notes receivables. No real estate was to pass under this contract, nor was any value stated for good will or the value of the business as a going concern. Ford Motor Company interposed the defense of U.C.C. § 2–201, the Statute of Frauds provision, as Ford had not signed the contract. The Third Circuit Court of Appeals articulated the test for determining the applicability of the U.C.C. and the reasons for its adoption as follows:

Rather than a view of mechanical technicality or of mathematical nicety, a view of the reasonable totality of the circumstances should control the characterization of the contract for sale. If, viewed as a whole, it can be concluded that the essential bulk of the assets to be transferred qualify as "goods", then it is appropriate to consider the transaction a "contract for the sale of goods". To insist that all assets qualify as "goods" would substantially thwart the intentions of the drafters of the Uniform Commercial Code; it would sanction the absurd. The agreement of sale and purchase could cover physical, movable assets, thus qualifying as "goods", as well as other assets—such as receivables from their particular lines—not so qualifying. But to segregate "goods" assets from "non-goods" assets, and to insist that the Statute of Frauds apply only to a portion of the contract, would be to make the

contract divisible and impossible of performance within the intention of the parties.

We believe it preferable to utilize a rule of reasonable characterization of the transaction as a whole.

We approve and adopt the rationale expressed in *DeFilippo*. We think it is equally inappropriate to segregate goods from non-goods and apply the measure of damages of the U.C.C. and its mandatory pre-requisites provided in T.C.A. § 47–2–706 to goods, as the seller's remedy for that portion of the contract, and apply a different measure of damages to non-goods. We think the majority of sales that involve a going business, consisting of both goods and non-goods, would present difficult and in some instances insurmountable problems of proof in segregating assets and determining their respective values at the time of the original contract and at the time of resale, in order to apply two different measures of damages.

As we indicated heretofore, the non-goods portion of this transaction was clearly the predominant factor and therefore the U.C.C. has no application.

The result is that the judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed. The cause is remanded to the trial court for the entry of an appropriate decree and the enforcement thereof. Costs are adjudged against defendant.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.

## ON PETITION TO REHEAR

Plaintiff has filed a "Motion for Additional Attorney's Fees", which we treat as a petition to rehear.

The petition is granted to the extent that our remand to the trial court shall authorize that court to entertain plaintiff's motion for additional attorney's fees.