IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs, January 10, 2005

## ERIN PRINTING AND PROMOTIONAL MARKETING, INC. v. CONVUM, LLC

**Appeal from the Chancery Court for Rutherford County**
**No. 99CV-1151     Robert E. Corlew III, Chancellor**

_____

**No. M2003-01449-COA-R3-CV - Filed February 15, 2005**

_____

The plaintiff claims that a balance is owed on a contract for the production of catalogues. For the reasons hereafter recited, we affirm the dismissal of the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Stephen M. Miller, Nashville, Tennessee, attorney for appellant, Erin Printing and Promotional Marketing Inc.

No attorney on appeal for the appellee.

**OPINION**

This is an action to recover the balance alleged to be owing on a contract for the production of goods.

The defendant distributed vacuum-related components throughout the country. The operation and furtherance of its business required a catalogue and to this end it sought a company having experience in catalogue layout and printing.

The plaintiff represented that it had the necessary expertise to produce the catalogue and could do so within 30 days and provide the printing in an additional 30 days. The plaintiff submitted a written estimate of $1375.00 for scanning and $5000.00 for layout work, to which would be added the cost of printing. Further discussion resulted in an agreement that scanning would be unsatisfactory and that the layout work would be done using autocad drawings and digital photos provided by the defendant, who paid $5000.00 for the lay-out work immediately.

It developed that the plaintiff corporation was a one-man operation headed up and owned by Jim Kelly who had no prior experience with the production of catalogues, and no production facilities. All work was subcontracted: the plaintiff was essentially a broker, who engaged the services of one McGreevy to produce the catalogue. He did not utilize the autocad drawings and photos provided by the defendant; rather, he scanned drawings and photos from catalogue pages the defendant had provided for reference, and then scanned the lay-out work also provided by the defendant. McGreevy's work was unsatisfactory, which was acknowledged by the plaintiff who terminated him.

But the plaintiff nevertheless sent invoices to the defendant for McGreevy's work, which was unusable, and which the defendant refused to pay.

The plaintiff thereupon sub-contracted the work to one Becker, whose work was satisfactory. He simply began anew. During Becker's tenure, however, the plaintiff continued to send invoices to the defendant with a demand for payment or the job would be discontinued. Except for the McGreevy work, the goods were accepted.

Notwithstanding the original estimate of $5000.00 for layout work, the plaintiff billed the defendant $37,256.35, plus $15,694.50 for printing. The latter amount was not questioned. The defendant paid, under protest, in addition to the initial payment of $5000.00, the further sum of $10,805.50.

The plaintiff filed this action to recover the balance owing on its invoice. The defendant denied the asserted indebtedness, and counterclaimed for damages owing to the alleged breaches of the contract by the plaintiff. The Chancellor dismissed the complaint and the counterclaim, holding that, contrary to the insistence of the plaintiff, Article II of the Uniform Commercial Code [hereafter "UCC"]was inapplicable and that the plaintiff could not recover under the common law because of the plain facts. The counterclaim was dismissed for lack of dispositive proof. The plaintiff appeals and presents for review whether the Chancellor erred in holding that the UCC was inapplicable. Review is *de novo* with no presumption of correctness, except as to factual matters. Rule 13(d), Tenn. R. App. P.[1]

The appellant argues that Article II of the UCC controls the disposition of this case. In the trial court the appellee argued that the essential issue involves a contract for services which are not within the purview of the UCC. Stated differently, if the contract involved a sale of goods, the UCC controls,[2] otherwise the common law controls. The Chancellor held, without elaboration, that

---

[1] Appellee's counsel was permitted to withdraw and no brief has been filed on behalf of the appellee.

[2] Although not pleaded by the plaintiff, the record reveals that the core issue to be determined was whether it was controlled by Article II of the UCC. The plaintiff merely alleged that it "brings suit on an account"; in a trial memorandum the plaintiff cited various sections of the UCC. We also note that although this case was heard on oral testimony, the testimony was not preserved because it "was consistent" with the trial depositions which, with exhibits,

(continued...)

"because it does appear that the work performed by the plaintiff involved both goods and services, the provisions of Article II of the UCC are not controlling."

Tennessee Code Annotated § 47-2-105(1) provides "that 'goods' means all things including specially manufactured goods, which are movable at the time of identification to the contract for sale. . . ." Modern commercial transactions are difficult to classify as purely for goods or for services, and our Supreme Court has addressed the issue only one time, in *Hudson v. Town & County True Value Hardware*, 666 S.W.2d 51 (Tenn. 1984), citing *De Filippo v. Ford Motor Co.*, 516 F.2d 1313 (3rd Cir 1975) for the conclusions, by analogy, that a view of the reasonable totality of the circumstances should control the characterization [of goods or non-goods] of the contract for sale. The "predominant factor" test was accepted, meaning that a distinction of whether the transaction in question "falls within the UCC, or falls outside the Code and is thus governed by common law." Applying this standard, we have no difficulty in holding that the predominant factor test is applicable to a mixed contract for goods and services, as in the case at Bar. This meaning has been approved in most of the jurisdictions which have considered the issue. *See*, e.g. *Skelton v. Druid City Hosp. Bd.,* 459 So.2d 818 (Ala. 1984); *Systems Design & Management Information Inc. v. Kansas City P.O. Emp. Credit Union*, 14 Kan. App.2d 266 (1990); *M.K.C. Equip. Co. .v. M.A.I.L. Code*, 843 F.Supp. 679 (D. Kan. 1994); *Western Lake Superior Sanitary v. Orfei*, 463 N.W.2d 781 (Minn. Ct. App. 1990) (whether a hybrid contract is characterized as for goods or services is generally a question of law); *Ogden Martin Sys. Inc. v. Whiting Corp.*, 179 F.3d 523 (7th Cir. Ind.1999) (party seeking benefit of the UCC bears burden of establishing that the predominant thrust of the transaction was for goods and only incidentally for services).

The predominant thrust test has been applied to contracts for the production of printed promotional materials, *see Gross Valentino Printing Co. v. Clarke*, 120 Ill. App. 3rd 907 (1st Dist.1983) in which the Illinois Court of Appeals, found that any "services rendered were of necessity directed to the production of the (printed materials)". Citing *Lake Wales Publishing Co. v. Florida Visitor, Inc.*, 335 So.2d 335 (Fla. Dist. Ct. App. 2nd Dist. 1976) (the printed materials were specially produced or manufactured and were movable). The Illinois Court of Appeals held that the "primary subject of the contract was the tangible printed magazines and not printing services. *Accord, Comack Merchandising, Inc. v. Highland Group*, 932 F.2d 1196 (7th Cir. 1991) (in action based on contract to produce two (2) million recipe brochures for a "pizza promotional project . . . the parties do not dispute that . . . the UCC governs this case." *Cf Starr Printing Co. v. Air Jamaica*, 45 F.Supp.2d. 625 (1999 U.S. Dist.).

In light of *Hudson*, *supra*, we cannot agree that because the contract was labor-intensive, it was a contract for services, and thus not within the ambit of the UCC. But our review and enquiry does not end at this point. The appellant argues that it is entitled to recover its invoiced prices for the catalogues because they were delivered to and accepted by the defendant, who made no timely

---

[2](...continued)
were filed in the record on appeal. This procedure does not comport with Rule 24, Tenn. R. App. P., but is not objected to and we are able to determine the essential thrust of the proof.

revocation of its acceptance. The record supports the argument that after the McGreevy experience the plaintiff found someone else to produce the catalogues, whose work was satisfactory. Thus there are no issues of acceptance or revocation of the goods. The crucial fact is simply that the plaintiff agreed to produce the catalogues for an estimated $5000.00, which was exceeded by nearly 700 percent. We agree with the Chancellor that the disparity evidenced by the difference between estimate and the total of the invoice is too great. The defendant offered proof that its acceptance of the catalogues was exigent because of the problems inherent in the McGreevy matter, and that it paid $10,805.50 in addition to the initial proposal of $5000.00. We conclude that the preponderance of the evidence supports the findings and judgment which is affirmed at the costs of the appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE