# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| YAN HONG ZENG,<br><br>      Respondent,<br><br>  v.<br><br>CASIMIR-SHELTON, LLC, a Washington<br>limited liability company,<br><br>      Appellant. | No. 56396-7-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Casimir-Shelton, LLC (Casimir) appeals the trial court's grant of summary judgment and order of specific performance of a purchase and sale agreement (PSA) in favor of Yan Hong Zeng (Zeng).

Casimir owned a building and leased it to CM1, LLC, which operated a cannabis business in the building. The lease expressly provided that any entry by Casimir onto the property required an escort by either the tenant, its employee, or its agent. Larry Cheung, one of CM1's principals, later insisted on being the only escort for any entry.

Zeng entered into a PSA with Casimir to buy the building. The PSA contained a feasibility contingency regarding all aspects of the property, including its physical condition. The PSA would terminate unless Zeng gave notice within 30 days that the contingency was satisfied. The PSA also stated that Casimir would permit Zeng to enter the property to conduct inspections, subject to the rights of the tenant.

Zeng requested an inspection of the building with less than five days left in the feasibility period. Casimir requested access from CM1, but Cheung informed Casimir that he would not be available to serve as the escort for an inspection until several days after the feasibility period expired because he was out of town. Casimir did not challenge Cheung's insistence that he be the only escort, and instead told Zeng that she would not be able to inspect the building during the feasibility period. Zeng did not waive the feasibility clause, so the PSA expired by its terms.

Zeng sued Casimir for specific performance of the PSA. The trial court granted Zeng's summary judgment in favor of Zeng and ordered specific performance of the PSA. The court also awarded Zeng her reasonable attorney fees under the PSA.

We hold that the trial court did not err in granting Zeng's summary judgment motion because the lease did not give CM1 the right to require that Cheung be the escort and that four days or less was a reasonable time to arrange for an inspection with a different escort. Accordingly, we affirm the trial court's order granting summary judgment and specific performance in favor of Zeng and the award of Zeng's attorney fees.

FACTS

*Background*

Casimir owned property in Shelton on which a cannabis production facility was located. In October 2019, Casimir entered into a lease agreement with CM1 regarding the property. The lease stated that CM1 would use the property for a cannabis producer/processor business. Paragraph 12.1 of the lease provided that the "[l]andlord may not enter premises without notice and escort by the Tenant or their employee or agent at any time." Clerk's Papers (CP) at 230. Cheung negotiated for the inclusion of this provision to ensure that the requirements of WAC 314-55, the regulations regarding cannabis businesses, would be met once CM1 obtained its

2

cannabis grow license. The lease did not state a time within which CM1 would be required to allow entry after a request.

The lease agreement did not specify a particular person who would be the escort for entry onto the property under paragraph 12.1. But once the grow license was issued, Cheung insisted that he be present during any site visits. Cheung would not authorize entry onto the premises without his presence. Casimir's broker toured the property at least six times after the cannabis license was issued, and Cheung insisted on being present for every tour.

In November 2020, Casimir entered into a PSA with Zeng to buy the property. Paragraph 23 of the PSA contained a feasibility contingency:

> Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction; in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition. . . . This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives notice that the Feasibility Contingency is satisfied to Seller before 5:00 PM on the Feasibility Contingency Date.

CP at 237. The feasibility contingency date was 30 days after mutual acceptance of the PSA. Zeng signed the PSA on November 3 and Casimir signed on November 11.[1]

> Regarding access to the property, paragraph 23(b) of the PSA stated,

> Seller shall permit Buyer and its agents, at Buyer's sole expense and risk, to enter the Property at reasonable times *subject to the rights of and after legal notice to tenants*, to conduct inspections concerning the Property . . . . Buyer shall schedule any entry onto the Property with Seller in advance and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and disruption of Seller's tenants.

CP at 238 (emphasis added).

---

[1] The parties dispute as to when the PSA was mutually accepted. Casimir's broker stated that mutual acceptance was on November 11, and Zeng's broker stated that it was on November 15. However, Zeng signed and initialed the PSA on November 4 and Casimir initialed and signed on November 11, and there is no reference to November 15 in the PSA. Therefore, for summary judgment purposes the 30 day feasibility period expired on December 11.

3

On December 7, a few days before the 30 feasibility period expired, Zeng's broker Stanley Lam contacted Casimir's broker Faustine Samec about arranging an inspection of the property. At 11:22 PM that night, Lam texted Samec and requested an inspection on December 9. The next morning, Samec texted Cheung and requested access for Zeng to conduct an inspection. Cheung informed Samec that he was not available to provide access until December 19 because he was out of town.

Samec told Lam that the inspection could not take place because the tenant was out of town. Lam pointed out that under the lease, any CM1 employee could be the escort. Samec told Lam that Cheung insisted that he be there during any inspection, so her hands were tied. Samec stated that if she had known about the request for the inspection earlier she could have worked something out. Lam replied, "My buyer did not know the tenant needs a lot of time for inspection. Usually 24 or 48 hour." CP at 268.

Lam then asked about extending the feasibility period. Casimir indicated that it would not extend the feasibility period unless some of the earnest money would become nonrefundable or more earnest money was provided. The only other alternative was to waive the inspection. Casimir also informed Zeng that it had received an unsolicited all cash offer to purchase the property that Casimir intended to accept if Zeng did not waive the feasibility contingency.

Zeng did not agree to provide additional consideration to extend the feasibility period. The feasibility period expired without Zeng giving notice that the feasibility contingency had been satisfied. Therefore, the PSA terminated under the terms of paragraph 23.

Zeng filed a lawsuit against Casimir, seeking specific performance of the PSA. Casimir filed a summary judgment motion, and Zeng filed a cross-motion for summary judgment.

Regarding CM1's insistence on having Cheung serve as the escort for any entry, Samec stated in a declaration: "My understanding is that the owner is concerned about making sure that the access procedure in the WAC is fully complied with and does not want to leave compliance in the hands of his employees. In addition, the owner is concerned about theft." CP at 261.

Casimir submitted the declaration of Michael Sahlman, one of its principals, who stated,

> In most commercial leases, the tenant is obligated to provide access to the Landlord within a defined period of time after being given such notice as is required in the lease, typically 24 or 48 hours. That is not the case here. The tenant was a marijuana grow operation strictly regulated in Washington. These regulations limit access and the form of the Lease placed the timing of access in control of the tenant.

CP at 259. Casimir also submitted the declaration of Cheung, who stated that paragraph 12.1 of the lease "vests control over when the Leasehold can be accessed in the hands of the tenant to ensure that requirements of WAC 314-55 would be met once [CM1] obtained its grow license." CP at 273.

The trial court granted Zeng's motion for summary judgment and ordered specific performance of the PSA. The court found that the PSA "did not require the presence of the tenant's owner, or any other specific individual, in order for [Zeng's] inspection to take place" and that Zeng "made a timely request for access to the property in order to conduct an inspection." CP at 296. Therefore, Casimir's denial of access was not on a valid basis and was a breach of the PSA.

Casimir appeals the trial court's grant of summary judgment in favor of Zeng.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review a trial court's decision on a summary judgment motion de novo. *Lavington v. Hillier*, 22 Wn. App. 2d 134, 143, 510 P.3d 373 (2022). We view the evidence and apply all

reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). There is a genuine issue of material fact only if reasonable minds could disagree on the conclusion of a factual issue. *Lavington*, 22 Wn. App. 2d at 143.

B.    OBLIGATION TO PROVIDE ACCESS

Casimir argues that the trial court erred in granting summary judgment in favor of Zeng based on the court's finding that Casimir breached the PSA. We disagree.

1.    Contract Provisions

Under paragraph 23(b) of the PSA, Casimir had a contractual obligation to permit Zeng to enter the property at reasonable times. However, that entry was expressly made "subject to the rights of . . . tenants." CP at 238.

The right of the tenant, CM1, regarding entry onto the property was stated in paragraph 12.1 of the lease: "Landlord may not enter premises without notice and escort by Tenant or their employee or agent at any time." CP at 230. The lease did not specify that only Cheung could serve as the escort. And the lease was silent regarding when CM1 was required to allow Casimir to enter the premises once Casimir requested entry.

The issue here is whether CM1 had the "right" under the lease to (1) insist that Cheung be the escort for Zeng's property inspection even though it would delay the inspection until after the feasibility contingency expired, and/or (2) allow the inspection only at a time that was more than four days after Casimir's request. If CM1 had one of these rights, Casimir's hands really were tied when CM1 declined to provide access before the feasibility deadline because Casimir's obligation under the PSA to provide entry was subject to CM1's "rights."

2.    Contract Interpretation

The primary purpose of contract interpretation is to ascertain the intent of the parties at the time of the contract formation. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). Courts give words their ordinary meaning unless the entire agreement clearly demonstrates otherwise. *Id.* at 713. Under the context rule, we can examine the context surrounding a contract's execution, "including the consideration of extrinsic evidence to help understand the parties' intent." *Id.* We can use extrinsic evidence to help determine the meaning of specific terms and words, but not to demonstrate a party's intention outside the contract or to contradict or modify the written words. *Id.*

A contract provision is ambiguous if the provision's "meaning is uncertain or is subject to two or more reasonable interpretations. *Id.* However, "[a] contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings." *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). And we will avoid reading an ambiguity into a contract when it is avoidable. *Id.*

Under the Uniform Commercial Code (UCC), a course of performance between the parties "may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." RCW 62A.1-303(d). A "course of performance" is

> a sequence of conduct between the parties to a particular transaction that exists if:
>
> (1) The agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and
> (2) The other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

RCW 62A.1-303(a).

"[T]he express terms of an agreement and any applicable course of performance . . . must be construed whenever reasonable as consistent with each other." RCW 62A.1-303(e). "If such a construction is unreasonable: (1) Express terms prevail over course of performance." RCW 62A.1-303(e).

The UCC does not apply to real estate leases, which instead are governed by the common law. *Olmsted v. Mulder*, 72 Wn. App. 169, 177, 863 P.2d 1355 (1993). However, this court has applied the UCC's course of performance analysis by analogy to a contract governed by the common law. *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 658-59, 266 P.3d 229 (2011). As in *Spradlin Rock* Products, we also apply the UCC course of performance provisions by analogy to the interpretation of Casimir's and CM1's lease.

3. Right to Designate a Specific Escort

Casimir argues that paragraph 12.1 of the lease must be interpreted as giving CM1 the right to designate a particular person – specifically Cheung – to serve as the escort when Casimir requested entry. We disagree.

Paragraph 12.1 did not expressly state that CM1 had the right to designate a particular person to serve as the escort for entry onto the property and certainly did not expressly state that CM1 had the right to insist that only Cheung serve as the escort. Instead, the lease gave CM1 the more general right to have an escort present when Casimir entered the property. And the escort was required to be "the Tenant *or* their employee *or* agent." CP at 230 (emphasis added).

The ordinary, unambiguous meaning of paragraph 12.1 is that CM1 had the right to have an escort for any entry by Casimir, and that escort could be either its principals (including Cheung) or its employees or its agents. This provision cannot reasonably be interpreted as

8

giving CM1 the *contractual right* to designate only Cheung as the escort. We reject Casimir's suggestions to the contrary.

First, Casimir suggests that CM1 had the right to designate a particular escort because Cheung specifically negotiated this provision to ensure that the requirements of WAC 314-55 would be met once CM1 obtained its cannabis grow license. But Cheung negotiated the right to have an escort present, not the right to have a particular escort present. Cheung could have, but did not, negotiate a provision stating that only he could be the escort.

Second, Casimir suggests that CM1 had the right to designate a particular escort because paragraph 12.1 gave CM1 control over selecting the escort. Under the lease, CM1 clearly had the right to choose the escort. But paragraph 12.1 stated that CM1 must select the escort from one of three categories: CM1's principals, employees, or agents. So while CM1 could choose Cheung to act as an escort, it had no contractual right to make him the *only* escort. In addition, nothing in the lease gave CM1 the right to delay entry onto the property if a particular person was not available.

Third, Casimir suggests that the use of Cheung as the only escort was established by the parties' course of performance. He points out that Cheung was the only person who served as an escort once CM1 obtained its cannabis license. But as noted above, the agreement's express terms and any course of performance generally must be construed as consistent with each other. RCW 62A.1-303(e). Here, designating Cheung as the escort was consistent with paragraph 12.1, which allowed CM1 to have an *either* a CM1 principal, a CM1 employee, or a CM1 agent present when Casimir entered.

We conclude that although CM1 preferred to have Cheung serve as the escort, it did not have a *contractual right* to insist that only Cheung could serve as the escort when that preference

9

interfered with Casimir's contractual right to enter the property. Therefore, instead of taking the position that its "hands were tied" by CM1's refusal to provide entry until 11 days later, Casimir had an obligation under the PSA to insist under the terms of the lease that CM1 allow entry even though Cheung was unavailable.

4. Timing of Allowing Entry

Casimir argues that the lease is ambiguous as to *when* CM1 was required to allow Casimir to enter property after a request, and that ambiguity creates a question of fact that cannot be resolved on summary judgment. We disagree.

The lease provisions regarding Casimir's entry onto the property are sparse. Initially, the lease does not expressly state that Casimir has the right to enter on request. But paragraph 12.1 essentially assumes such a right as long as there is notice and an escort is present.[2] And Casimir does not argue that it had no contractual right to enter after notice.

In addition, paragraph 12.1 does not state a time within which CM1 must allow Casimir to enter following a request. The declarations of Sahlman and Cheung both state that the lease gave CM1 control over when the property could be accessed. But those statements are inconsistent with paragraph 12.1, which is completely silent regarding the timing of access.

A reasonable time for performance may be implied where the contract imposes an obligation but does not specify a time for its performance. *Byrne v. Ackerlund*, 108 Wn. 2d 445, 455, 739 P.2d 1138 (1987). What is reasonable depends on "the nature of the contract, the positions of the parties, their intent, and the circumstances surrounding performance." *Pepper & Tanner, Inc. v. KEDO, Inc.*, 13 Wn. App. 433, 435, 535 P.2d 857 (1975). What constitutes a

---

[2] The only express right of entry provided in the lease is in paragraph 7.2, which stated that Casimir could enter to provide maintenance and repairs if CM1 failed to do so.

No. 56396-7-II

reasonable time generally is a question of fact. *Smith v. Smith*, 4 Wn. App. 608, 612, 484 P.2d 409 (1971). However, in some cases involving undisputed facts a court can determine a reasonable time as a matter of law. *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 558, 519 P.2d 278 (1974).

The parties submitted minimal evidence regarding what would be a reasonable time for allowing access. Sahlman stated that commercial leases typically provide that access must be allowed within 24 or 48 hours after notice, although this lease did not contain such a provision. Lam – Zeng's broker – stated that a tenant usually needs 24 or 48 hour notice. The reason Sahlman gave for not including a 24 or 48 hour provision in the lease was because CM1 was operating a cannabis facility, which is strictly regulated under Washington law. And there was evidence from Cheung that CM1 had concerns about access to the property because of compliance with cannabis regulations.

The implication from these statements is that more preparation was required for entry into a cannabis production/processing facility than an ordinary business. However, the only regulation to which Casimir refers is WAC 314-55-083, which requires only that nonemployee visitors display an identification badge issued by the cannabis licensee and that a log be kept providing specific information for all visits. These requirements are not difficult or complicated, and clearly would not require more than the typical 24 to 48 hour notice before providing access.

More significantly, CM1 never took the position that it required more than four days' notice to allow access. The only reason Cheung gave for not allowing prompt access was that he was out of town, not that more time was needed to arrange an inspection. There is no indication that CM1 could not have arranged for access during the feasibility period if Casimir had enforced the lease provision that another CM1 employee or agent could serve as the escort.

11

We conclude as a matter of law that four days was a reasonable time for performance of the obligation to allow entry.

### 5. Other Issues

Casimir argues that the inability to obtain an inspection before the feasibility deadline was Zeng's fault because she waited until the end of the feasibility period to request an inspection. Casimir also argues that any breach of the PSA was the tenant's fault. We reject both arguments.

Casimir emphasizes that Zeng failed to follow industry practice by not conducting an inspection early in the feasibility process. However, the plain language of the PSA gave Zeng 30 days to conduct an inspection. And the PSA did not specify that Lam had to make a request for an inspection within a certain period of time. In any event, this case turns on a determination of a reasonable time for performance of Casimir's obligation to allow access. Because the reasonable time was four days or less, Zeng's request was timely.

Casimir also argues that any breach of the PSA was caused by CM1. But this argument is immaterial. Casimir had an obligation under the PSA to permit Zeng to enter the property to conduct an inspection, subject to CM1's rights. Because CM1 had no contractual right to refuse to allow an inspection within four days, Casimir breached the PSA regardless of whether CM1's refusal was wrongful. The PSA could have but did not make Casimir's obligation to provide entry subject to CM1's cooperation or permission. That obligation was subject only to CM1's *rights* under the lease.

### 6. Summary

Casimir had an obligation under the PSA to allow Zeng to inspect the building, subject to the tenant's rights. As discussed above, CM1 did not have a right under the lease to insist that

12

only Cheung serve as the escort for an inspection. And CM1 did not have a right under the lease to require more than four days' notice before allowing access. As a result, Casimir should have insisted that CM1 allow entry during the feasibility period even though Cheung was unavailable. The failure to do so breached the PSA.

C.      ATTORNEY FEES ON APPEAL

Both parties request that we award them reasonable attorney fees. Paragraph 41(c) of the PSA provides that the prevailing party in any lawsuit is entitled to recover attorney fees. Zeng is the prevailing party on appeal. Therefore, we award attorney fees to Zeng.

CONCLUSION

We affirm the trial court's order granting summary judgment and specific performance in favor of Zeng and the award of Zeng's attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, A.C.J.

_____
VELJACIC, J.

13